UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| AUTOCONNECT HOLDINGS LLC, | |
| Plaintiff, | |
| v. | CASE NO.: 2:24-cv-802 |
| TOYOTA MOTOR CORPORATION, TOYOTA MOTOR NORTH AMERICA, INC., TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC., and TOYOTA MOTOR SALES, U.S.A., INC., | **JURY TRIAL REQUESTED** |
| Defendants. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff AutoConnect Holdings LLC ("AutoConnect") files this Complaint and demand

for a jury trial seeking relief for patent infringement by Defendants Toyota Motor Corporation,

Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America,

Inc., and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota" or the "Toyota Defendants").

Plaintiff states and alleges the following:

## THE PARTIES

1.        This case is brought by AutoConnect, a limited liability company organized and

existing under the laws of Delaware with a registered address at 131 Continental Drive, Suite

305, Newark, DE, 19713.  AutoConnect was created in 2015 for the purpose of researching,

developing, collaborating, and commercializing several automotive and other technologies, and

for the protection of inventions and intellectual property that the company's principals developed

over the years.

2.      The asserted patents are part of a broader portfolio of technologies owned by AutoConnect that includes nearly 100 issued United States patents and pending applications related to new and improved vehicle technologies.  The technologies described and claimed in AutoConnect's patents have revolutionized the automotive industry.

3.      AutoConnect is owned by Peter Suorsa, Gregg Hershenson, and Christopher Ricci.

4.      Mr. Ricci is a leading technologist and innovator behind several technologies, including advancements in automotive technologies, computer control systems, passive RFID, robotics, SaaS, and IoT.  Mr. Ricci is the primary inventor of the AutoConnect patents, including the Asserted Patents (as defined below).  Before his work with the Asserted Patents, Mr. Ricci developed a wide range of technologies at companies like The Foxboro Company, where he worked as an engineer designing computer control systems; Polaroid, where he developed patents related to printer harmonics; and NCR Corporation, where he collaborated with global technology firms on under-utilized technologies, such as ones relevant to telecom and public-sector businesses.

5.      Mr. Ricci began collaborating with Peter Suorsa, a serial entrepreneur, in the late 1990s.  Mr. Suorsa's ability to identify, develop, and commercialize innovative technology is well-documented throughout his career, with successful projects spanning several different industries.  For example, Mr. Suorsa formed EMC Corporation in the 1970s, a company that designed and built printed circuit boards.  After selling that company in the early 1990s, Mr. Suorsa went on to found several other companies focused on new and emerging technologies.

6.      During their first collaboration, Mr. Ricci presented Mr. Suorsa with his ideas for passive RFID technology.  Together they developed and patented several innovations in this area, eventually securing a deal with the U.S. government.  This collaboration marked the beginning of a long-standing partnership between Mr. Ricci and Mr. Suorsa, which would later extend into automotive and other technology sectors.

7.      For example, in 2001, Mr. Ricci worked at NCR Corporation, where he played a pivotal role in developing and managing the company's IP portfolio.  He discovered underutilized technologies and eventually collaborated with Mr. Suorsa to further develop them. Their efforts led to significant success.  Mr. Ricci eventually left NCR, and Mr. Suorsa took over the CEO position of Prime Technologies, a subsidiary of NCR where he developed anti-counterfeiting technology for use in multiple industries.

8.      In 2011, Mr. Ricci joined Flextronics, the second largest manufacturing services company in the world, where he applied his expertise in bringing innovative projects to fruition. At Flextronics, Mr. Ricci led a team that developed a next-generation automotive interface, which was showcased at the 2013 Detroit Auto Show.  Once again, Mr. Ricci collaborated with Mr. Suorsa to further develop this technology.  The project was ahead of its time, generated significant industry interest, and helped bolster Flextronics' reputation for innovation.

9.      After his work at Flextronics, in 2015, Mr. Ricci went on to design and develop a wide range of vehicle technologies while at NIO, a company that specializes in the manufacturing of high-performance, electric vehicles.  Mr. Ricci was ultimately awarded almost fifty United States patents and pending applications resulting from his work on electric vehicles.

10.     Mr. Suorsa saw great potential in the technology that Mr. Ricci had developed at Flextronics, Mr. Suorsa and Gregg Hershenson, a business expert with a background in technology and venture capital, secured a deal to continue its development independently.

11.     Mr. Hershenson has been instrumental over the years in founding several different high-tech companies.  For example, Mr. Hershenson is the founder of DocBox Inc., a medical device company with innovative technology that brings hospitals into the 21st century.  DocBox is currently working in partnership with the DoD, CIMIT (Harvard Teaching Hospitals, MIT, Draper Labs), the VA and Lockheed Martin to implement its new vision for healthcare. Mr. Hershenson is also a co-founder of Waveguide, a company that brought technology out of Harvard University that revolutionizes the speed and ease with which people can run complex lab tests.

12.     On information and belief, Defendant Toyota Motor Corporation ("TMC") is a corporation organized and existing under the laws of Japan with a principal place of business at 1 Toyota-cho, Toyota City, Aichi Prefecture 471-8571, Japan.  On information and belief, TMC does business itself, and through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas.

13.     On information and belief, Defendant Toyota Motor North America, Inc. ("TMNA") is a corporation organized and existing under the laws of the State of California with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  On information and belief, TMNA is the wholly owned operating subsidiary of TMC and is responsible for all operations of TMC in the United States, including research and development, manufacturing, sales, offers for sale, marketing, importation, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota, Lexus, and Scion).  According to its

website, TMNA is "headquartered in Plano, Texas, [and] brings together Toyota's marketing, sales, engineering and manufacturing arms in North America on one shared, state-of-the-art campus."[1]

14.    On information and belief, Defendant Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA") is a corporation organized and existing under the laws of the State of Kentucky with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  On information and belief, TEMA is a wholly owned subsidiary of TMC and is responsible for research and development and manufacturing of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States.  According to its website, TEMA "is responsible for engineering design and development, R&D and manufacturing activities in the U.S.… and is also responsible for manufacturing plants across North America" including in the State of Texas.[2]

15.    On information and belief, Defendant Toyota Motor Sales, U.S.A., Inc. ("TMS") is a corporation organized and existing under the laws of the State of California with its principal place of business at 6565 Headquarters Drive W1-3C, Plano, Texas 75024.  On information and belief, TMS is a wholly owned subsidiary of TMC and is responsible for sales, marketing, and distribution of automotive vehicles from Toyota-managed brands (e.g., Toyota and Lexus) in the United States, including in the State of Texas.

16.    On information and belief, the Toyota Defendants have entered into a joint enterprise for the purpose of designing, manufacturing, distributing, importing, offering for sale, and/or selling automotive vehicles and components thereof that infringe the Asserted Patents, inducing others to commit acts of patent infringement of the Asserted Patents, and/or

---

[1] https://www.toyota.com/usa/operations/map.html#!/tcal.
[2] https://www.toyota.com/usa/operations#!/Engineering-Manufacturing.

contributing to the infringement by others of the Asserted Patents.  On information and belief, the Toyota Defendants have entered into this joint enterprise for the purpose of exploiting and profiting from the Accused Instrumentalities, as detailed herein.  On information and belief, the Toyota Defendants have together entered into express and/or implied agreements to exploit and profit from the Accused Instrumentalities.  On information and belief, the Toyota Defendants, via their joint enterprise, generate revenues, business goodwill, and market share, which bolsters their respective reputations and ability to generate sales of the Accused Instrumentalities.  On information and belief, the actions of the Toyota Defendants were carried out in furtherance of the common purpose of exploiting and profiting from the Accused Instrumentalities.  On information and belief, the actions of the Toyota Defendants complained of herein benefit the Toyota Defendants and, as such, exhibit a common pecuniary interest (including but not limited to revenues, goodwill, market share, and sales advantage) between the Toyota Defendants.  On information and belief, each of the Toyota Defendants are sophisticated parties and entered into agreements with each other and mutually exercise control over the joint enterprise.  On information and belief, the joint enterprise exists and operates in this judicial District.

## THE ASSERTED PATENTS

17.     This is a civil action for infringement of U.S. Patent No. 8,793,034 ("the '034 patent"), U.S. Patent No. 9,020,491 ("the '491 patent"), U.S. Patent No. 9,020,697 ("the '697 patent"), U.S. Patent No. 9,116,786 ("the '786 patent"), U.S. Patent No. 9,123,186 ("the '186 patent"), U.S. Patent No. 9,140,560 ("the '560 patent"), U.S. Patent No. 9,147,296 ("the '296 patent"), U.S. Patent No. 9,290,153 ("the '153 patent"), U.S. Patent No. 10,862,764 ("the '764 patent"), U.S. Patent No. 11,163,931 ("the '931 patent"), U.S. Patent No. 12,039,243 ("the '243 patent") (collectively, the "Asserted Patents").

18.     The '034 patent is entitled "Feature Recognition for Configuring a Vehicle Console and Associated Devices" and was duly and legally issued by the United States Patent and Trademark Office on July 29, 2014.  The '034 patent stems from Application No. 13/679,204, filed on November 16, 2012.  AutoConnect owns the entire right, title, and interest in and to the '034 patent, including the right to sue for and collect past damages.  A true and correct copy of the '034 patent is attached to this Complaint as Exhibit A1.

19.     The '491 patent is entitled "Sharing Applications/Media Between Car and Phone (Hydroid)" and was duly and legally issued by the United States Patent and Trademark Office on April 28, 2015.  The '491 patent stems from Application No. 13/679,857, filed on November 16, 2012.  AutoConnect owns the entire right, title, and interest in and to the '491 patent, including the right to sue for and collect past damages.  A true and correct copy of the '491 patent is attached to this Complaint as Exhibit B1.

20.     The '697 patent is entitled "Vehicle-Based Multimode Discovery" and was duly and legally issued by the United States Patent and Trademark Office on April 28, 2015.  The '697 patent stems from Application No. 14/253,312, filed on April 15, 2014.  AutoConnect owns the entire right, title, and interest in and to the '697 patent, including the right to sue for and collect past damages.  A true and correct copy of the '697 patent is attached to this Complaint as Exhibit C1.

21.     The '786 patent is entitled "On Board Vehicle Networking Module" and was duly and legally issued by the United States Patent and Trademark Office on August 25, 2015.  The '786 patent stems from Application No. 13/828,513, filed on March 14, 2014.  AutoConnect owns the entire right, title, and interest in and to the '786 patent, including the right to sue for

and collect past damages.  A true and correct copy of the '786 patent is attached to this Complaint as Exhibit D1.

22.    The '186 patent is entitled "Remote Control of Associated Vehicle Devices" and was duly and legally issued by the United States Patent and Trademark Office on September 1, 2015.  The '186 patent stems from Application No. 14/253,371, filed on April 15, 2014.  AutoConnect owns the entire right, title, and interest in and to the '186 patent, including the right to sue for and collect past damages.  A true and correct copy of the '186 patent is attached to this Complaint as Exhibit E1.

23.    The '560 patent is entitled "In-Cloud Connection for Car Multimedia" and was duly and legally issued by the United States Patent and Trademark Office on September 22, 2015.  The '560 patent stems from Application No. 13/679,878, filed on November 16, 2012.  AutoConnect owns the entire right, title, and interest in and to the '560 patent, including the right to sue for and collect past damages.  A true and correct copy of the '560 patent is attached to this Complaint as Exhibit F1.

24.    The '296 patent is entitled "Customization of Vehicle Controls and Settings Based on User Profile Data" and was duly and legally issued by the United States Patent and Trademark Office on September 29, 2015.  The '296 patent stems from Application No. 14/253,204, filed on April 15, 2014.  AutoConnect owns the entire right, title, and interest in and to the '296 patent, including the right to sue for and collect past damages.  A true and correct copy of the '296 patent is attached to this Complaint as Exhibit G1.

25.    The '153 patent is entitled "Vehicle-Based Multimode Discovery" and was duly and legally issued by the United States Patent and Trademark Office on March 22, 2016.  The '153 patent stems from Application No. 14/684,856, filed on April 13, 2015.  AutoConnect owns

the entire right, title, and interest in and to the '153 patent, including the right to sue for and collect past damages.  A true and correct copy of the '153 patent is attached to this Complaint as Exhibit H1.

26.    The '764 patent is entitled "Universal Console Chassis for the Car" and was duly and legally issued by the United States Patent and Trademark Office on December 8, 2020.  The '764 patent stems from Application No. 16/243,051, filed on January 8, 2019.  AutoConnect owns the entire right, title, and interest in and to the '764 patent, including the right to sue for and collect past damages.  A true and correct copy of the '764 patent is attached to this Complaint as Exhibit I1.

27.    The '931 patent is entitled "Access and Portability of User Profiles Stored as Templates" and was duly and legally issued by the United States Patent and Trademark Office on November 2, 2021.  The '931 patent stems from Application No. 17/233,412, filed on April 16, 2021.  AutoConnect owns the entire right, title, and interest in and to the '931 patent, including the right to sue for and collect past damages.  A true and correct copy of the '931 patent is attached to this Complaint as Exhibit J1.

28.    The '243 patent is entitled "Access and Portability of User Profiles Stored as Templates" and was duly and legally issued by the United States Patent and Trademark Office on July 16, 2024.  The '243 patent stems from Application No. 17/515,961, filed on November 1, 2021.  AutoConnect owns the entire right, title, and interest in and to the '243 patent, including the right to sue for and collect past damages.  A true and correct copy of the '243 patent is attached to this Complaint as Exhibit K1.

29.    The '034, '491, '697, '786, '186, '560, '296, '153, '764, '931, and '243 patents are collectively referred to as the "Asserted Patents."

30.     To the extent applicable, AutoConnect has complied with 35 U.S.C. § 287 for each of the Asserted Patents.

## JURISDICTION AND VENUE

31.     This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.*  This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

32.     This Court has personal jurisdiction over the Toyota Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long-Arm Statute because the claims asserted herein arise out of or are related to the Toyota Defendants' acts constituting business in this State, including: (i) at least a portion of the actions complained of herein; (ii) recruiting Texas residents, directly or through an intermediary located in this State, for employment inside or outside this State; and (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services, including the Accused Instrumentalities.  TEX. CIV. PRAC. & REM. CODE § 17.042.

33.     The Toyota Defendants have committed acts within this Judicial District giving rise to this action.  On information and belief, the Toyota Defendants, collectively and individually, including their agents and/or intermediaries, have committed and continue to commit acts of infringement in this Judicial District where they conduct business extensively by shipping, distributing, offering for sale, selling, and advertising automotive vehicles (and components thereof) and services.

34.     The Toyota Defendants' contractual relationships with each other and with their subsidiaries located in this District to sell or at the least import and sell the Toyota Defendants'

products within the United States is alone sufficient to establish minimum contacts with the United States.  The Toyota Defendants, through their website(s), show they retain control over directing dealerships, customers, end users, and distributors for the Accused Instrumentalities (defined below).

35.    Venue is proper in the Eastern District of Texas as to Defendant TMC pursuant to at least 28 U.S.C. §§ 1391 and 1400(b), as well as under the "alien venue rule."  *Brunette Machine Works, Ltd. v. Kockum Indus., Inc.*, 406 U.S. 706 (1972); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018); *Weatherford Tech. v. Tesco Corp.*, 2018 WL 5315206 at *2-3 (E.D. Tex. Oct. 26, 2018).  As noted above, Defendant TMC is a foreign entity which maintains a regular and established business presence in the United States.

36.    Venue is also proper in this District as to Defendants TMNA, TEMA, and TMS pursuant to at least 28 U.S.C. § 1400(b).  As noted above, Defendants TMNA, TEMA, and TMS maintain regular and established business presences in this District, at which they have committed acts of infringement and placed the Accused Instrumentalities into the stream of commerce, throughout the State of Texas and in the Eastern District of Texas.

## PRE-SUIT DISCUSSIONS

37.    AutoConnect contacted Toyota about the inventions described and claimed in AutoConnect's patent portfolio in December 2023, when it sent a letter to the Senior Vice President, Corporate Resources, General Counsel and Chief Legal Officer for Toyota Motor North America.  The letter identified all but one of the Asserted Patents (as well as the other patents in AutoConnect's portfolio) thereby providing notice of those patents to Toyota.  The letter also included infringement claim charts that compared AutoConnect's understanding of Toyota's Accused Instrumentalities (as defined herein) based on publicly available information

to representative claims in nineteen different AutoConnect patents, including all but one of the Asserted Patents.

38.    AutoConnect's December 2023 letter requested a telephone conference with Toyota's representative to confirm AutoConnect's understanding of the exemplary features of Toyota's Accused Instrumentalities identified in the infringement claim charts.  The letter also invited licensing discussions with Toyota and requested their response by January 19, 2024.

39.    On January 3, 2024, Kelly Chen, Managing Counsel for Toyota Motor North America, Inc., confirmed Toyota's receipt of AutoConnect's December 13 letter and infringement claim charts and stated that Toyota was reviewing them.  The letter requested that all future correspondence between the parties be directed to Ms. Chen.

40.    On January 19, 2024, Masanobu Yamashita, Toyota Motor Corporation's Project General Manager for its Intellectual Property Division, sent a letter on behalf of Toyota following up on Ms. Chen's January letter.  Mr. Yamashita confirmed that Toyota shared AutoConnect's December 13 letter and accompanying infringement claim charts with their suppliers for evaluation.  Mr. Yamashita's letter went on to say that "[d]ue to the large number of patents and wide range of accused technologies identified in your letter well as the year-end holidays, the evaluation of the letter and claim charts has not been completed.  We will contact you once the evaluation is finished.  We would appreciate your patience."

41.    On May 21, 2024, Toyota presented AutoConnect with their response on only four of the nineteen patents (which included the asserted '931 patent) for which AutoConnect provided detailed infringement claim charts outlining Toyota's infringement in December 2023.  For those four patents, Toyota alleged that the accused features in their Accused Instrumentalities implement the technology previously described in patent references that predate

the AutoConnect inventions.  Toyota declined to provide claim charts analogous to the detailed ones provided by AutoConnect to explain how each and every claim limitation in the AutoConnect patents is allegedly disclosed by the references.  As a result, AutoConnect was left to speculate as to the rationale for Toyota's allegations, including for the asserted '931 patent.

42.  As for Toyota's response to AutoConnect's infringement allegations for the other fifteen patents, Toyota deferred responsibility for thirteen of them to their suppliers, Panasonic Automotive Systems, Co., Ltd. ("Panasonic") and DENSO TEN Corporation ("Denso").  Toyota appointed Panasonic as the "contact" for ten of AutoConnect's patents, including the asserted '491, '560, '153, and '764 patents, and appointed Denso as its "contact" for the other three patents, including the asserted '697 and '186 patents.  Despite AutoConnect's numerous attempts to discuss the substance of its allegations with Panasonic and Denso, AutoConnect learned that neither party intended to respond to the substance of AutoConnect's infringement allegations.

43.  After analyzing Toyota's patent references concerning the four AutoConnect patents, on July 15, 2024, AutoConnect wrote a follow-up letter to Atsushi Sajiki, a Project Manager for the Intellectual Property Division of Toyota Motor Corporation.  AutoConnect's letter explained how the references fail to disclose, either alone or in combination, each of the claim elements of AutoConnect's patents, including the asserted '931 patent.  AutoConnect's letter further explained the unproductive nature of its discussions with Toyota's suppliers, Panasonic and Denso, regarding the substance of AutoConnect's allegations with respect to AutoConnect's other thirteen patents, including the asserted '491, '560, '153, '764, '697, and '186 patents.  Moreover, AutoConnect pointed out that Toyota failed to address AutoConnect's infringement allegations concerning the asserted '034 and '296 patents.  AutoConnect's letter concluded that the parties had "now reached an impasse with respect to each of the AutoConnect

patents.  Nevertheless, we remain open to engaging meaningful discussions toward a resolution of Toyota's infringement of the AutoConnect patents.  Please let us know if you are interested in participating in further discussions."

44.    Over the next two months, AutoConnect and Toyota exchanged several communications through which AutoConnect continued to request that Toyota address its infringement allegations or engage in licensing discussions.

45.    On October 1, 2024, ten months after AutoConnect's December 2023 letter provided detailed claim charts outline Toyota's infringement, Toyota finally addressed the asserted '034 and '296 patents.  For those two patents, Toyota alleged that the accused features in their Accused Instrumentalities implement technology previously described in patent references that predate the AutoConnect inventions.  Unfortunately, Toyota declined to provide AutoConnect with any written materials, such as claim charts analogous to those provided by AutoConnect regarding infringement.  AutoConnect was left to speculate as to the rationale for Toyota's allegations that every claim element of AutoConnect's asserted '034 and '296 patents are disclosed either alone or in combination by the alleged prior art.

46.    Toyota has not engaged in any substantive licensing discussions with AutoConnect concerning any of the Asserted Patents.

47.    Toyota does not have a license to any of the Asserted Patents, either express or implied.

48.    On information and belief, Toyota has not taken any affirmative steps to avoid infringing any of the Asserted Patents after learning of them.

## COUNT I

### (Infringement of the '034 Patent)

49.     AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

50.     On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '034 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable face identification in vehicles, in all makes and models from the 2023 model year to the present, including those listed in Exhibit A2 ("the '034 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '034 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '034 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '034 Accused Instrumentalities to perform one or more method claims of the '034 patent.

51.     Attached to this Complaint as Exhibit A3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1, 9 and 14 of the '034 patent are met by the '034 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '034 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '034 patent, as discussed herein and in Exhibit A3.

52.    Toyota's infringement of the '034 patent has also been indirect.

53.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '034 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '034 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '034 patent.

54.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '034 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 9 and 14 of the '034 patent, or with willful blindness to that fact.[3]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '034 Accused Instrumentalities in ways that directly infringe the '034 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '034 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '034 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '034 patent.[4]  Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '034 Accused

---

[3] *E.g.*, https://support.toyota.com/s/article/How-do-I-set-up-my-ve-10883?language=en_US; https://support.lexus.com/s/article/How-do-I-set-up-my-ve-10876.
[4] *E.g.*, https://www.toyota.com/owners/warranty-owners-manuals/digital/article/grand-highlander/2024/om0e126u/ch04se050403/

Instrumentalities constitutes direct infringement of the '034 patent but took deliberate actions to avoid learning of these facts.

55.    On information and belief, Toyota has been aware of the inventions described and claimed in the '034 patent since at least shortly after the issuance of the '034 patent in July 2014, or was willfully blind to the existence of the patent.  For example, in the 2016-2023 time frame, Toyota encountered patents related to the '034 patent during prosecution of its own patents at least 60 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '034 patent.

56.    On information and belief, Toyota has known that the making and/or using of their '034 Accused Instrumentalities constitutes an act of direct infringement of the '034 patent. On information and belief, Toyota obtained this knowledge at least since January 2016. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Toyota, therefore, had knowledge that the making and/or using of Toyota's '034 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '034 patent or Toyota was otherwise willfully blind to that fact.

57.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '034 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including

dealerships, customer and end users), of at least claim 9 of the '034 patent.  For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '034 Accused Instrumentalities (including vehicle software components associated with their face identification technology) to these third parties with full knowledge of the '034 patent.  These third parties have assembled the components to make and use the '034 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '034 Accused Instrumentalities in ways that infringed/infringe the '034 patent.[5]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '034 patent.  Toyota supplied/supplies these components with knowledge of the '034 patent and knowledge that the components were especially made for use in an infringing manner.

58.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '034 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '034 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 9 and 14 of the '034 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '034 Accused Instrumentalities (including vehicle

---

[5] *E.g.*, https://www.toyota.com/owners/warranty-owners-manuals/digital/article/grand-highlander/2024/om0e126u/ch04se050403/

software components associated with their face identification technology) with full knowledge of the '034 patent. These third parties have made or used the '034 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '034 Accused Instrumentalities and use them in ways that would infringe the '034 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '034 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

59.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '034 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '034 patent (or would have infringed if those acts occurred within the United States).

60.    Moreover, on information and belief, Toyota's infringement of the '034 patent has been and continues to be willful and merits enhanced damages.

61.    For example, Toyota has known of the '034 patent and its infringement of the '034 patent as described herein.

62.     On information and belief, since knowing of the '034 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '034 patent.

63.     On information and belief, Toyota has made no attempt to design around the claims of the '034 patent.

64.     On information and belief, Toyota has no reasonable basis for believing that the claims of the '034 patent are either invalid or not infringed by the '034 Accused Instrumentalities and/or or its activities concerning the '034 Accused Instrumentalities.

65.     AutoConnect has been damaged as the result of Toyota's willful infringement.

66.     On information and belief, Toyota will continue to infringe one or more claims of the '034 patent unless and until it is enjoined by this Court.

67.     On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '034 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '034 patent.

## COUNT II

### (Infringement of the '491 Patent)

68.     AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

69.     On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '491 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems, in-vehicle multimedia systems, and hardware and software components thereof, including non-transitory computer readable media that store computer-executable

instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Toyota vehicles, in all makes and models from the 2019 model year to the present, including those listed in Exhibit B2 ("the '491 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '491 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '491 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '491 Accused Instrumentalities to perform one or more method claims of the '491 patent.

70.    Attached to this Complaint as Exhibit B3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 11 and 16 of the '491 patent are met by the '491 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '491 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '491 patent, as discussed herein and in Exhibit B3.

71.    Toyota's infringement of the '491 patent has also been indirect.

72.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '491 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '491 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '491 patent.

73.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them

how to use the '491 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 11 and 16 of the '491 patent, or with willful blindness to that fact.[6]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '491 Accused Instrumentalities in ways that directly infringe the '491 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '491 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '491 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '491 patent.[7] Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '491 Accused Instrumentalities constitutes direct infringement of the '491 patent but took deliberate actions to avoid learning of these facts.

74.     On information and belief, Toyota has been aware of the inventions described and claimed in the '491 patent since at least shortly after the issuance of the '491 patent in April 2015, or was willfully blind to the existence of the patent.  For example, in the 2016-2023 time frame, Toyota encountered patents related to the '491 patent during prosecution of its own patents at least 60 times, and those patents share the same priority documents and specifications,

---

[6] *E.g.*, https://support.toyota.com/s/article/What-is-Digital-Key-Toyota?language=en_US; https://support.lexus.com/s/article/What-is-Digital-Key
[7] *E.g.*, https://www.toyota.com/content/dam/toyota/owners/amcs/pdf/new/Apple_CarPlay_Android-Auto-How-To-Guide.pdf; https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Digital%20Key/57384aa0-ee3f-11ec-b6b0-95bb90f1bc59?model=Toyota%20Crown&year=2023

had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '491 patent.

75.     On information and belief, Toyota has known that the making and/or using of their '491 Accused Instrumentalities constitutes an act of direct infringement of the '491 patent. On information and belief, Toyota obtained this knowledge at least since January 2016. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Toyota, therefore, had knowledge that the making and/or using of Toyota's '491 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '491 patent or Toyota was otherwise willfully blind to that fact.

76.     On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '491 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 11 of the '491 patent.  For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '491 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto) to these third parties with full knowledge of the '491 patent.  These third parties have assembled the components to make and use the '491 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications,

website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '491 Accused Instrumentalities in ways that infringed/infringe the '491 patent.[8]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '491 patent. Toyota supplied/supplies these components with knowledge of the '491 patent and knowledge that the components were especially made for use in an infringing manner.

77.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '491 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '491 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 11 and 16 of the '491 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '491 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto) with full knowledge of the '491 patent.  These third parties have made or used the '491 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '491 Accused Instrumentalities and use them in ways that would infringe the '491 patent if such combination occurred within the United States.  Toyota provides these instructions to the third parties with the knowledge that assembly and usage in

---

[8] *E.g.*, https://www.toyota.com/content/dam/toyota/owners/amcs/pdf/new/Apple_CarPlay_Android-Auto-How-To-Guide.pdf

accordance with their instructions would infringe the '491 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

78.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '491 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '491 patent (or would have infringed if those acts occurred within the United States).

79.    Moreover, on information and belief, Toyota's infringement of the '491 patent has been and continues to be willful and merits enhanced damages.

80.    For example, Toyota has known of the '491 patent and its infringement of the '491 patent as described herein.

81.    On information and belief, since knowing of the '491 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '491 patent.

82.    On information and belief, Toyota has made no attempt to design around the claims of the '491 patent.

83.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '491 patent are either invalid or not infringed by the '491 Accused Instrumentalities and/or or its activities concerning the '491 Accused Instrumentalities.

84.    AutoConnect has been damaged as the result of Toyota's willful infringement.

85.    On information and belief, Toyota will continue to infringe one or more claims of the '491 patent unless and until it is enjoined by this Court.

86.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '491 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '491 patent.

## COUNT III

### (Infringement of the '697 Patent)

87.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

88.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '697 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Toyota App), and hardware and software components thereof, including non-transitory computer readable media that stores microprocessor-executable instructions and hardware and software components that enable Toyota's Digital Key feature, in all makes and models from the 2022 model year to the present, including those listed in Exhibit C2 ("the '697 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '697 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '697 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '697 Accused Instrumentalities to perform one or more method claims of the '697 patent.

89.     Attached to this Complaint as Exhibit C3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1, 8, and 15 of the '697 patent are met by the '697 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '697 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '697 patent, as discussed herein and in Exhibit C3.

90.     Toyota's infringement of the '697 patent has also been indirect.

91.     On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '697 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '697 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '697 patent.

92.     For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '697 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 15 of the '697 patent, or with willful blindness to that fact.[9]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '697 Accused Instrumentalities in ways that directly infringe the '697 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '697 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals,

---

[9] *E.g.*, https://support.toyota.com/s/article/What-is-Digital-Key-Toyota?language=en_US; https://support.lexus.com/s/article/What-is-Digital-Key

brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '697 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '697 patent.[10] Alternatively, Toyota has acted with willful blindness to these facts. On information and belief, Toyota knows that there is a high probability that the use of Toyota's '697 Accused Instrumentalities constitutes direct infringement of the '697 patent but took deliberate actions to avoid learning of these facts.

93.     On information and belief, Toyota has been aware of the inventions described and claimed in the '697 patent since at least shortly after the issuance of the '697 patent in April 2015, or was willfully blind to the existence of the patent. For example, in the 2015-2023 time frame, Toyota encountered patents related to the '697 patent during prosecution of its own patents at least 90 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '697 patent. Moreover, Toyota had knowledge of the '697 patent when Toyota identified that patent to the USPTO during prosecution of their own patent applications, starting at least as early as April 2017. Between April 2017 and October 2020, Toyota cited the '697 patent during prosecution of at least four Toyota patent applications.

94.     On information and belief, Toyota has known that the making and/or using of their '697 Accused Instrumentalities constitutes an act of direct infringement of the '697 patent. On information and belief, Toyota obtained this knowledge at least since September 2015. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter,

---

[10] *E.g.*, https://support.toyota.com/s/article/What-is-Digital-Key-Toyota?language=en_US; https://support.lexus.com/s/article/What-is-Digital-Key

and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Toyota, therefore, had knowledge that the making and/or using of Toyota's '697 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '697 patent or Toyota was otherwise willfully blind to that fact.

95.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '697 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 8 of the '697 patent.  For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '697 Accused Instrumentalities (including vehicle software components associated with Toyota's Digital Key Technology) to these third parties with full knowledge of the '697 patent.  These third parties have assembled the components to make and use the '697 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '697 Accused Instrumentalities in ways that infringed/infringe the '697 patent.[11]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '697 patent.

---

[11] *E.g.*, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Digital%20Key/57384aa0-ee3f-11ec-b6b0 95bb90f1bc59?model=Toyota%20Crown&year=2023

Toyota supplied/supplies these components with knowledge of the '697 patent and knowledge that the components were especially made for use in an infringing manner.

96.     On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '697 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '697 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 8 and 15 of the '697 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '697 Accused Instrumentalities (including vehicle software components associated with Toyota's Digital Key Technology) with full knowledge of the '697 patent.  These third parties have made or used the '697 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '697 Accused Instrumentalities and use them in ways that would infringe the '697 patent if such combination occurred within the United States.  Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '697 patent if such assembly and usage took place in the United States.  Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

97.     On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties

(or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '697 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '697 patent (or would have infringed if those acts occurred within the United States).

98.    Moreover, on information and belief, Toyota's infringement of the '697 patent has been and continues to be willful and merits enhanced damages.

99.    For example, Toyota has known of the '697 patent and its infringement of the '697 patent as described herein.

100.    On information and belief, since knowing of the '697 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '697 patent.

101.    On information and belief, Toyota has made no attempt to design around the claims of the '697 patent.

102.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '697 patent are either invalid or not infringed by the '697 Accused Instrumentalities and/or or its activities concerning the '697 Accused Instrumentalities.

103.    AutoConnect has been damaged as the result of Toyota's willful infringement.

104.    On information and belief, Toyota will continue to infringe one or more claims of the '697 patent unless and until it is enjoined by this Court.

105.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '697 patent. AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '697 patent.

## COUNT IV

### (Infringement of the '786 Patent)

106.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

107.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '786 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Toyota App), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Toyota vehicles, in certain makes and models from the 2019 model year to the present, including those listed in Exhibit D2 ("the '786 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '786 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '786 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '786 Accused Instrumentalities to perform one or more method claims of the '786 patent.

108.    Attached to this Complaint as Exhibits D3 and D4 are representative charts that, on information and belief, describe how, as non-limiting examples, the elements of exemplary claim 23 of the '786 patent are met by the '786 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '786 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '786 patent, as discussed herein and in Exhibits D3 and D4.

109.    Toyota's infringement of the '786 patent has also been indirect.

110.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '786 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '786 Accused Instrumentalities. Such making and/or using by third parties constitutes direct infringement of one or more claims of the '786 patent.

111.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '786 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 23 of the '786 patent, or with willful blindness to that fact.[12] On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '786 Accused Instrumentalities in ways that directly infringe the '786 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '786 patent. Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '786 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '786 patent.[13] Alternatively, Toyota has acted with willful blindness to these facts. On information and belief,

---

[12] *E.g.*, https://pressroom.toyota.com/toyotas-all-new-audio-multimedia-system-is-here-and-it-is-a-game-changer/; https://pressroom.lexus.com/the-all-new-lexus-interface-multimedia-system-is-here-and-it-is-a-game-changer/.

[13] *E.g.*, https://www.toyota.com/content/dam/toyota/owners/amcs/pdf/new/Apple_CarPlay_Android-Auto-How-To-Guide.pdf

Toyota knows that there is a high probability that the use of Toyota's '786 Accused Instrumentalities constitutes direct infringement of the '786 patent but took deliberate actions to avoid learning of these facts.

112.    On information and belief, Toyota has been aware of the inventions described and claimed in the '786 patent since at least shortly after the issuance of the '786 patent in August 2015, or was willfully blind to the existence of the patent.  For example, in the 2015-2023 time frame, Toyota encountered several patents related to the '786 patent during prosecution of its own patents, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '786 patent.

113.    On information and belief, Toyota has known that the making and/or using of their '786 Accused Instrumentalities constitutes an act of direct infringement of the '786 patent. On information and belief, Toyota obtained this knowledge at least since August 2015. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Toyota, therefore, had knowledge that the making and/or using of Toyota's '786 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '786 patent or Toyota was otherwise willfully blind to that fact.

114.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '786 patent under 35 U.S.C. § 271(c) because they have contributed to

direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 23 of the '786 patent.  For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '786 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto and/or Toyota Apps in Toyota's vehicles) to these third parties with full knowledge of the '786 patent.  These third parties have assembled the components to make and use the '786 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '786 Accused Instrumentalities in ways that infringed/infringe the '786 patent.[14]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '786 patent.  Toyota supplied/supplies these components with knowledge of the '786 patent and knowledge that the components were especially made for use in an infringing manner.

115.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '786 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '786 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 23 of the '786 patent if such combination occurred within the United States.  For example,

---

[14] *E.g.*, https://www.toyota.com/content/dam/toyota/owners/amcs/pdf/new/Apple_CarPlay_Android-Auto-How-To-Guide.pdf

Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '786 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto and/or Toyota Apps in Toyota's vehicles) with full knowledge of the '786 patent. These third parties have made or used the '786 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '786 Accused Instrumentalities and use them in ways that would infringe the '786 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '786 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

116. On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '786 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '786 patent (or would have infringed if those acts occurred within the United States).

117. Moreover, on information and belief, Toyota's infringement of the '786 patent has been and continues to be willful and merits enhanced damages.

118.    For example, Toyota has known of the '786 patent and its infringement of the '786 patent as described herein.

119.    On information and belief, since knowing of the '786 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '786 patent.

120.    On information and belief, Toyota has made no attempt to design around the claims of the '786 patent.

121.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '786 patent are either invalid or not infringed by the '786 Accused Instrumentalities and/or or its activities concerning the '786 Accused Instrumentalities.

122.    AutoConnect has been damaged as the result of Toyota's willful infringement.

123.    On information and belief, Toyota will continue to infringe one or more claims of the '786 patent unless and until it is enjoined by this Court.

124.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '786 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '786 patent.

## COUNT V

### (Infringement of the '186 Patent)

125.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

126.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '186 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle

systems (including in-vehicle multimedia systems), mobile applications (including the Toyota App), and hardware and software components thereof, including non-transitory computer readable media that stores microprocessor-executable instructions and hardware and software components that enable Toyota's Digital Key feature, in certain makes and models from the 2022 model year to the present, including those listed in Exhibit E2 ("the '186 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '186 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '186 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '186 Accused Instrumentalities to perform one or more method claims of the '186 patent.

127.    Attached to this Complaint as Exhibit E3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1, 8, 15 of the '186 patent are met by the '186 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '186 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '186 patent, as discussed herein and in Exhibit E3.

128.    Toyota's infringement of the '186 patent has also been indirect.

129.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '186 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '186 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '186 patent.

130.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '186 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 15 of the '186 patent, or with willful blindness to that fact.[15]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '186 Accused Instrumentalities in ways that directly infringe the '186 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '186 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '186 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '186 patent.[16]  Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '186 Accused Instrumentalities constitutes direct infringement of the '186 patent but took deliberate actions to avoid learning of these facts.

131.    On information and belief, Toyota has been aware of the inventions described and claimed in the '186 patent since at least shortly after the issuance of the '186 patent in September 2015, or was willfully blind to the existence of the patent.  For example, in the 2015-2023 time frame, Toyota encountered patents related to the '186 patent during prosecution of its own

---

[15] *E.g.*, https://support.toyota.com/s/article/What-is-Digital-Key-Toyota?language=en_US; https://support.lexus.com/s/article/What-is-Digital-Key
[16] *E.g.*, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Digital%20Key/57384aa0-ee3f-11ec-b6b0-95bb90f1bc59?model=Toyota%20Crown&year=2023

patents at least 85 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '186 patent. Moreover, Toyota had knowledge of the '186 patent when Toyota identified that patent to the USPTO during prosecution of their own patent applications, starting at least as early as January 2019. Between January 2019 and January 2023, Toyota cited the '186 patent during prosecution of at least two Toyota patent applications.

132.    On information and belief, Toyota has known that the making and/or using of their '186 Accused Instrumentalities constitutes an act of direct infringement of the '186 patent. On information and belief, Toyota obtained this knowledge at least since September 2015. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto. To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Toyota, therefore, had knowledge that the making and/or using of Toyota's '186 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '186 patent or Toyota was otherwise willfully blind to that fact.

133.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '186 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claims 8 and 15 of the '186 patent. For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling,

offering for sale, and/or importing into the United States components of the '186 Accused Instrumentalities (including vehicle software components associated with Toyota's Digital Key Technology) to these third parties with full knowledge of the '186 patent.  These third parties have assembled the components to make and use the '186 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '186 Accused Instrumentalities in ways that infringed/infringe the '186 patent.[17]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '186 patent. Toyota supplied/supplies these components with knowledge of the '186 patent and knowledge that the components were especially made for use in an infringing manner.

134.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '186 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '186 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 8 and 15 of the '186 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '186 Accused Instrumentalities (including vehicle software components associated with Toyota's Digital Key Technology) with full knowledge of the '186 patent.  These third parties have made or used the '186 Accused Instrumentalities

---

[17] *E.g.*, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Digital%20Key/57384aa0-ee3f-11ec-b6b0-95bb90f1bc59?model=Toyota%20Crown&year=2023

according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '186 Accused Instrumentalities and use them in ways that would infringe the '186 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '186 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

135.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '186 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '186 patent (or would have infringed if those acts occurred within the United States).

136.    Moreover, on information and belief, Toyota's infringement of the '186 patent has been and continues to be willful and merits enhanced damages.

137.    For example, Toyota has known of the '186 patent and its infringement of the '186 patent as described herein.

138.    On information and belief, since knowing of the '186 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '186 patent.

139.    On information and belief, Toyota has made no attempt to design around the claims of the '186 patent.

140.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '186 patent are either invalid or not infringed by the '186 Accused Instrumentalities and/or or its activities concerning the '186 Accused Instrumentalities.

141.    AutoConnect has been damaged as the result of Toyota's willful infringement.

142.    On information and belief, Toyota will continue to infringe one or more claims of the '186 patent unless and until it is enjoined by this Court.

On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '186 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '186 patent.

## COUNT VI

### (Infringement of the '560 Patent)

143.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

144.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '560 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems (including an in-vehicle multimedia system), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Toyota vehicles, in certain makes and models from the 2019 model year to the present,

including those listed in Exhibit F2 ("the '560 Accused Instrumentalities"). Toyota has also directly infringed and continues to directly infringe one or more claims of the '560 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '560 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '560 Accused Instrumentalities to perform one or more method claims of the '560 patent.

145.    Attached to this Complaint as Exhibit F3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 11 and 16 of the '560 patent are met by the '560 Accused Instrumentalities. On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '560 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '560 patent, as discussed herein and in Exhibit F3.

146.    Toyota's infringement of the '560 patent has also been indirect.

147.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '560 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '560 Accused Instrumentalities. Such making and/or using by third parties constitutes direct infringement of one or more claims of the '560 patent.

148.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '560 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 11 and 16 of the '560 patent, or with

willful blindness to that fact.[18]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '560 Accused Instrumentalities in ways that directly infringe the '560 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '560 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '560 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '560 patent.[19]  Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '560 Accused Instrumentalities constitutes direct infringement of the '560 patent but took deliberate actions to avoid learning of these facts.

149.    On information and belief, Toyota has been aware of the inventions described and claimed in the '560 patent since at least shortly after the issuance of the '560 patent in September 2015, or was willfully blind to the existence of the patent.  For example, in the 2016-2023 time frame, Toyota encountered patents related to the '560 patent during prosecution of its own patents at least 60 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '560 patent.

150.    On information and belief, Toyota has known that the making and/or using of their '560 Accused Instrumentalities constitutes an act of direct infringement of the '560 patent.

---

[18] *E.g.*, https://support.lexus.com/s/article/Apple-CarPlay-10846;
https://support.lexus.com/s/article/Android-Auto-10845
[19] *E.g.*, https://www.toyota.com/content/dam/toyota/owners/amcs/pdf/new/Apple
_CarPlay_Android-Auto-How-To-Guide.pdf

On information and belief, Toyota obtained this knowledge at least since January 2016. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto. To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Toyota, therefore, had knowledge that the making and/or using of Toyota's '560 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '560 patent or Toyota was otherwise willfully blind to that fact.

151.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '560 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claims 11 and 16 of the '560 patent. For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '560 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Toyota's vehicles) to these third parties with full knowledge of the '560 patent. These third parties have assembled the components to make and use the '560 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '560 Accused Instrumentalities in ways that infringed/infringe the '560 patent.[20]  Toyota's components were

---

[20] *E.g.*, https://support.lexus.com/s/article/Apple-CarPlay-10846; https://support.lexus.com/s/article/Android-Auto-10845

and are not staple articles or commodities of commerce suitable for substantial noninfringing uses. Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '560 patent. Toyota supplied/supplies these components with knowledge of the '560 patent and knowledge that the components were especially made for use in an infringing manner.

152.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '560 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '560 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 11 and 16 of the '560 patent if such combination occurred within the United States. For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '560 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Toyota's vehicles) with full knowledge of the '560 patent. These third parties have made or used the '560 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '560 Accused Instrumentalities and use them in ways that would infringe the '560 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '560 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made

and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

153.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '560 patent.  At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '560 patent (or would have infringed if those acts occurred within the United States).

154.    Moreover, on information and belief, Toyota's infringement of the '560 patent has been and continues to be willful and merits enhanced damages.

155.    For example, Toyota has known of the '560 patent and its infringement of the '560 patent as described herein.

156.    On information and belief, since knowing of the '560 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '560 patent.

157.    On information and belief, Toyota has made no attempt to design around the claims of the '560 patent.

158.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '560 patent are either invalid or not infringed by the '560 Accused Instrumentalities and/or or its activities concerning the '560 Accused Instrumentalities.

159.    AutoConnect has been damaged as the result of Toyota's willful infringement.

160.    On information and belief, Toyota will continue to infringe one or more claims of the '560 patent unless and until it is enjoined by this Court.

161.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '560 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '560 patent.

## COUNT VII

### (Infringement of the '296 Patent)

162.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

163.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '296 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Toyota App), and hardware and software components thereof, including non-transitory computer-readable media that store computer-executable instructions and hardware and software that enable User Profiles in Toyota vehicles, in certain makes and models from the 2022 model year to the present, including those listed in Exhibit G2 ("the '296 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '296 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '296 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '296 Accused Instrumentalities to perform one or more method claims of the '296 patent.

164.    Attached to this Complaint as Exhibit G3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary

claim 1, 7, 8, and 14 of the '296 patent are met by the '296 Accused Instrumentalities. On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '296 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '296 patent, as discussed herein and in Exhibit G3.

165.    Toyota's infringement of the '296 patent has also been indirect.

166.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '296 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '296 Accused Instrumentalities. Such making and/or using by third parties constitutes direct infringement of one or more claims of the '296 patent.

167.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '296 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claims 8 and 14 of the '296 patent, or with willful blindness to that fact.[21] On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '296 Accused Instrumentalities in ways that directly infringe the '296 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '296 patent. Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '296

---

[21] *E.g.*, https://support.toyota.com/s/article/Toyota-App-User-Profi-10737?language=en_US

Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '296 patent.[22]  Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '296 Accused Instrumentalities constitutes direct infringement of the '296 patent but took deliberate actions to avoid learning of these facts.

168.    On information and belief, Toyota has been aware of the inventions described and claimed in the '296 patent since at least shortly after the issuance of the '296 patent in September 2015, or was willfully blind to the existence of the patent.  For example, in the 2015-2023 time frame, Toyota encountered patents related to the '296 patent during prosecution of its own patents at least 86 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '296 patent.  Moreover, Toyota had knowledge of the '296 patent at least since the USPTO Examiner identified the asserted '296 patent to Toyota during prosecution of Toyota's own patent application, starting as early as March 2021.

169.    On information and belief, Toyota has known that the making and/or using of their '296 Accused Instrumentalities constitutes an act of direct infringement of the '296 patent.  On information and belief, Toyota obtained this knowledge at least since September 2015.  Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Toyota,

---

[22] *E.g.*, https://support.toyota.com/s/article/How-do-I-set-up-my-ve-10883?language=en_US; https://support.toyota.com/s/article/What-is-Digital-Key-Toyota?language=en_US

therefore, had knowledge that the making and/or using of Toyota's '296 Accused

Instrumentalities by their dealerships, customers and/or other end users infringes the '296 patent

or Toyota was otherwise willfully blind to that fact.

170.    On information and belief, Toyota has indirectly infringed and continues to

indirectly infringe the '296 patent under 35 U.S.C. § 271(c) because they have contributed to

direct infringement, and continue to contribute to direct infringement, by third parties (including

dealerships, customer and end users), of at least claims 8 and 14 of the '296 patent.  For example,

Toyota has sold, offered for sale, and/or imported into the United States and is currently selling,

offering for sale, and/or importing into the United States components of the '296 Accused

Instrumentalities (including vehicle software components associated with Toyota's Digital Key

Technology) to these third parties with full knowledge of the '296 patent.  These third parties

have assembled the components to make and use the '296 Accused Instrumentalities according

to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications,

website materials, promotional materials and the like that instructed/instruct them how to

assemble and use the components of the '296 Accused Instrumentalities in ways that

infringed/infringe the '296 patent.[23]  Toyota's components were and are not staple articles or

commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's

components constituted/constitute a material part of the inventions claimed in the '296 patent.

Toyota supplied/supplies these components with knowledge of the '296 patent and knowledge

that the components were especially made for use in an infringing manner.

171.    On information and belief, Toyota has also indirectly infringed and continues to

indirectly infringe the '296 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the

---

[23] *E.g.*, https://toyotaaudioandconnectedservicessupport.com/toyota/feature/Digital%20Key/57384aa0-ee3f-11ec-b6b0-95bb90f1bc59?model=Toyota%20Crown&year=2023

United States, one or more components of the '296 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 8 and 14 of the '296 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '296 Accused Instrumentalities (including vehicle software components associated with Toyota's Digital Key Technology) with full knowledge of the '296 patent.  These third parties have made or used the '296 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '296 Accused Instrumentalities and use them in ways that would infringe the '296 patent if such combination occurred within the United States.  Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '296 patent if such assembly and usage took place in the United States.  Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

172.     On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '296 patent.  At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the

acts of such third parties directly infringed/infringe the '296 patent (or would have infringed if those acts occurred within the United States).

173.    Moreover, on information and belief, Toyota's infringement of the '296 patent has been and continues to be willful and merits enhanced damages.

174.    For example, Toyota has known of the '296 patent and its infringement of the '296 patent as described herein.

175.    On information and belief, since knowing of the '296 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '296 patent.

176.    On information and belief, Toyota has made no attempt to design around the claims of the '296 patent.

177.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '296 patent are either invalid or not infringed by the '296 Accused Instrumentalities and/or or its activities concerning the '296 Accused Instrumentalities.

178.    AutoConnect has been damaged as the result of Toyota's willful infringement.

179.    On information and belief, Toyota will continue to infringe one or more claims of the '296 patent unless and until it is enjoined by this Court.

180.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '296 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '296 patent.

## COUNT VIII

### (Infringement of the '153 Patent)

181.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

182.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '153 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems (including an in-vehicle multimedia system), and hardware and software components thereof, including non-transitory computer readable media that store computer-executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Toyota vehicles, in certain makes and models from the 2019 model year to the present, including those listed in Exhibit H2 ("the '153 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '153 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '153 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '153 Accused Instrumentalities to perform one or more method claims of the '153 patent.

183.    Attached to this Complaint as Exhibit H3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1 and 12 of the '153 patent are met by the '153 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '153 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '153 patent, as discussed herein and in Exhibit H3.

184.    Toyota's infringement of the '153 patent has also been indirect.

185.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '153 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '153 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '153 patent.

186.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '153 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 12 of the '153 patent, or with willful blindness to that fact.[24]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '153 Accused Instrumentalities in ways that directly infringe the '153 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '153 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '153 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '153 patent.[25]  Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '153 Accused

---

[24] *E.g.*, https://support.lexus.com/s/article/Apple-CarPlay-10846;
https://support.lexus.com/s/article/Android-Auto-10845
[25] *E.g.*, https://www.toyota.com/owners/warranty-owners-manuals/digital/article/mirai/2023/om62112u/ksx1656552989289/

Instrumentalities constitutes direct infringement of the '153 patent but took deliberate actions to avoid learning of these facts.

187.    On information and belief, Toyota has been aware of the inventions described and claimed in the '153 patent since at least shortly after the issuance of the '153 patent in March 2016, or was willfully blind to the existence of the patent.  For example, in the 2016-2023 time frame, Toyota encountered patents related to the '153 patent during prosecution of its own patents at least 82 times, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '153 patent.

188.    On information and belief, Toyota has known that the making and/or using of their '153 Accused Instrumentalities constitutes an act of direct infringement of the '153 patent. On information and belief, Toyota obtained this knowledge at least since July 2016.  Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto.  To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts.  Toyota, therefore, had knowledge that the making and/or using of Toyota's '153 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '153 patent or Toyota was otherwise willfully blind to that fact.

189.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '153 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including

dealerships, customer and end users), of at least claims 12 of the '153 patent.  For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '153 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Toyota's vehicles) to these third parties with full knowledge of the '153 patent.  These third parties have assembled the components to make and use the '153 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '153 Accused Instrumentalities in ways that infringed/infringe the '153 patent.[26]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '153 patent. Toyota supplied/supplies these components with knowledge of the '153 patent and knowledge that the components were especially made for use in an infringing manner.

190.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '153 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '153 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 12 of the '153 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '153 Accused Instrumentalities (including vehicle

---

[26] *E.g.*, https://support.lexus.com/s/article/Apple-CarPlay-10846; https://support.lexus.com/s/article/Android-Auto-10845

software components associated with Apple CarPlay and/or Android Auto in Toyota's vehicles) with full knowledge of the '153 patent. These third parties have made or used the '153 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '153 Accused Instrumentalities and use them in ways that would infringe the '153 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '153 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

191.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '153 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '153 patent (or would have infringed if those acts occurred within the United States).

192.    Moreover, on information and belief, Toyota's infringement of the '153 patent has been and continues to be willful and merits enhanced damages.

193.    For example, Toyota has known of the '153 patent and its infringement of the '153 patent as described herein.

194.    On information and belief, since knowing of the '153 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '153 patent.

195.    On information and belief, Toyota has made no attempt to design around the claims of the '153 patent.

196.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '153 patent are either invalid or not infringed by the '153 Accused Instrumentalities and/or or its activities concerning the '153 Accused Instrumentalities.

197.    AutoConnect has been damaged as the result of Toyota's willful infringement.

198.    On information and belief, Toyota will continue to infringe one or more claims of the '153 patent unless and until it is enjoined by this Court.

199.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '153 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '153 patent.

## COUNT IX

### (Infringement of the '764 Patent)

200.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

201.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '764 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle communication systems (including in-vehicle multimedia systems), and hardware and software components thereof, including non-transitory computer readable media that store computer-

executable instructions and hardware and software that enable Apple CarPlay and/or Android Auto in Toyota vehicles, in certain makes and models from the 2019 model year to the present, including those listed in Exhibit I2 ("the '764 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '764 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '764 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '764 Accused Instrumentalities to perform one or more method claims of the '764 patent.

202.    Attached to this Complaint as Exhibit I3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '764 patent are met by the '764 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '764 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '764 patent, as discussed herein and in Exhibit I3.

203.    Toyota's infringement of the '764 patent has also been indirect.

204.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '764 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '764 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '764 patent.

205.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them

how to use the '764 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '764 patent, or with willful blindness to that fact.[27]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '764 Accused Instrumentalities in ways that directly infringe the '764 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '764 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '764 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '764 patent.[28] Alternatively, Toyota has acted with willful blindness to these facts.  On information and belief, Toyota knows that there is a high probability that the use of Toyota's '764 Accused Instrumentalities constitutes direct infringement of the '764 patent but took deliberate actions to avoid learning of these facts.

206.    On information and belief, Toyota has been aware of the inventions described and claimed in the '764 patent since at least shortly after the issuance of the '764 patent in December 2020, or was willfully blind to the existence of the patent.  For example, Toyota had knowledge of the '764 patent at least since the USPTO Examiner identified the '764 patent to Toyota during prosecution of Toyota's own patent application in March 2021.

207.    On information and belief, Toyota has known that the making and/or using of their '764 Accused Instrumentalities constitutes an act of direct infringement of the '764 patent.

---

[27] *E.g.*, https://support.lexus.com/s/article/Apple-CarPlay-10846; https://support.lexus.com/s/article/Android-Auto-10845

[28] *E.g.*, https://www.toyota.com/content/dam/toyota/owners/amcs/pdf/new/Apple _CarPlay_Android-Auto-How-To-Guide.pdf

On information and belief, Toyota obtained this knowledge at least since March 2021. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto. To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Toyota, therefore, had knowledge that the making and/or using of Toyota's '764 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '764 patent or Toyota was otherwise willfully blind to that fact.

208.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '764 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 1 of the '764 patent. For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '764 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Toyota's vehicles) to these third parties with full knowledge of the '764 patent. These third parties have assembled the components to make and use the '764 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '764 Accused Instrumentalities in ways that infringed/infringe the '764 patent.[29]  Toyota's components were and are not staple articles or

---

[29] *E.g.*, https://www.toyota.com/connect/

commodities of commerce suitable for substantial noninfringing uses. Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '764 patent. Toyota supplied/supplies these components with knowledge of the '764 patent and knowledge that the components were especially made for use in an infringing manner.

209. On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '764 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '764 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claims 12 of the '764 patent if such combination occurred within the United States. For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '764 Accused Instrumentalities (including vehicle software components associated with Apple CarPlay and/or Android Auto in Toyota's vehicles) with full knowledge of the '764 patent. These third parties have made or used the '764 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '764 Accused Instrumentalities and use them in ways that would infringe the '764 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '764 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

210.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '764 patent.  At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '764 patent (or would have infringed if those acts occurred within the United States).

211.    Moreover, on information and belief, Toyota's infringement of the '764 patent has been and continues to be willful and merits enhanced damages.

212.    For example, Toyota has known of the '764 patent and its infringement of the '764 patent as described herein.

213.    On information and belief, since knowing of the '764 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '764 patent.

214.    On information and belief, Toyota has made no attempt to design around the claims of the '764 patent.

215.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '764 patent are either invalid or not infringed by the '764 Accused Instrumentalities and/or or its activities concerning the '764 Accused Instrumentalities.

216.    AutoConnect has been damaged as the result of Toyota's willful infringement.

217.    On information and belief, Toyota will continue to infringe one or more claims of the '764 patent unless and until it is enjoined by this Court.

218.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '764 patent.  AutoConnect will

suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '764 patent.

## COUNT X

### (Infringement of the '931 Patent)

219.     AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

220.     On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '931 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), server systems, mobile applications (including the Toyota App), computing devices that execute the Toyota App, and hardware and software components thereof, including non-tangible computer-readable media that stores microprocessor-executable instructions and Toyota's in-vehicle hardware and software components that enable Toyota's Digital Key feature, in certain makes and models from the 2022 model year to the present, including those listed in Exhibit J2 ("the '931 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '931 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '931 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '931 Accused Instrumentalities to perform one or more method claims of the '931 patent.

221.     Attached to this Complaint as Exhibit J3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claim 1 of the '931 patent are met by the '931 Accused Instrumentalities.  On information and

belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '931 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '931 patent, as discussed herein and in Exhibit J3.

222.    Toyota's infringement of the '931 patent has also been indirect.

223.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '931 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '931 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '931 patent.

224.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '931 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '931 patent, or with willful blindness to that fact.[30]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '931 Accused Instrumentalities in ways that directly infringe the '931 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '931 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '931 Accused Instrumentalities with

---

[30] *E.g.*, https://support.toyota.com/s/article/How-do-I-get-a-Digital-Key-Toyota?language=en_US; https://support.lexus.com/s/article/What-is-Digital-Key

knowledge that such use constitutes an act of direct infringement of the '931 patent.[31] Alternatively, Toyota has acted with willful blindness to these facts. On information and belief, Toyota knows that there is a high probability that the use of Toyota's '931 Accused Instrumentalities constitutes direct infringement of the '931 patent but took deliberate actions to avoid learning of these facts.

225. On information and belief, Toyota has been aware of the inventions described and claimed in the '931 patent since at least shortly after the issuance of the '931 patent in November 2021, or was willfully blind to the existence of the patent. For example, in the 2021-2023 time frame, Toyota encountered patents related to the '931 patent during prosecution of its own patents, and those patents share the same priority documents and specifications, had the same named inventor (Chris Ricci), and had the same initial assignees (Flextronics AP, LLC and AutoConnect Holdings LLC) as the '931 patent. Moreover, Toyota had knowledge of the '931 patent when Toyota identified that patent to the USPTO during prosecution of their own patent application in June 2022.

226. On information and belief, Toyota has known that the making and/or using of their '931 Accused Instrumentalities constitutes an act of direct infringement of the '931 patent. On information and belief, Toyota obtained this knowledge at least since November 2021. Moreover, Toyota has had such knowledge upon service of AutoConnect's December 2023 letter provided Toyota with such knowledge, as demonstrated by the claim charts attached to the letter, and upon the filing and service of this Complaint as demonstrated by the claim charts attached hereto. To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Toyota,

---

[31] *E.g.*, https://assets.sia.toyota.com/publications/en/om-s/OM0E126U/pdf/OM0E126U.pdf; https://www.toyota.com/connected-services/toyota-app/

therefore, had knowledge that the making and/or using of Toyota's '931 Accused

Instrumentalities by their dealerships, customers and/or other end users infringes the '931 patent

or Toyota was otherwise willfully blind to that fact.

227.    On information and belief, Toyota has indirectly infringed and continues to

indirectly infringe the '931 patent under 35 U.S.C. § 271(c) because they have contributed to

direct infringement, and continue to contribute to direct infringement, by third parties (including

dealerships, customer and end users), of at least claim 1 of the '931 patent.  For example, Toyota

has sold, offered for sale, and/or imported into the United States and is currently selling, offering

for sale, and/or importing into the United States components of the '931 Accused

Instrumentalities (including vehicle software components associated with Toyota's Digital Key

Technology) to these third parties with full knowledge of the '931 patent.  These third parties

have assembled the components to make and use the '931 Accused Instrumentalities according

to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications,

website materials, promotional materials and the like that instructed/instruct them how to

assemble and use the components of the '931 Accused Instrumentalities in ways that

infringed/infringe the '931 patent.[32]  Toyota's components were and are not staple articles or

commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's

components constituted/constitute a material part of the inventions claimed in the '931 patent.

Toyota supplied/supplies these components with knowledge of the '931 patent and knowledge

that the components were especially made for use in an infringing manner.

228.    On information and belief, Toyota has also indirectly infringed and continues to

indirectly infringe the '931 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the

---

[32] *E.g.*, https://support.toyota.com/s/article/How-do-I-get-a-Digital-Key-Toyota?language=en_US; https://support.lexus.com/s/article/What-is-Digital-Key

United States, one or more components of the '931 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 1 of the '931 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '931 Accused Instrumentalities (including vehicle software components associated with Toyota's Digital Key Technology) with full knowledge of the '931 patent.  These third parties have made or used the '931 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '931 Accused Instrumentalities and use them in ways that would infringe the '931 patent if such combination occurred within the United States.  Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '931 patent if such assembly and usage took place in the United States.  Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

229.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '931 patent.  At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the

acts of such third parties directly infringed/infringe the '931 patent (or would have infringed if those acts occurred within the United States).

230.    Moreover, on information and belief, Toyota's infringement of the '931 patent has been and continues to be willful and merits enhanced damages.

231.    For example, Toyota has known of the '931 patent and its infringement of the '931 patent as described herein.

232.    On information and belief, since knowing of the '931 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '931 patent.

233.    On information and belief, Toyota has made no attempt to design around the claims of the '931 patent.

234.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '931 patent are either invalid or not infringed by the '931 Accused Instrumentalities and/or or its activities concerning the '931 Accused Instrumentalities.

235.    AutoConnect has been damaged as the result of Toyota's willful infringement.

236.    On information and belief, Toyota will continue to infringe one or more claims of the '931 patent unless and until it is enjoined by this Court.

237.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '931 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '931 patent.

## COUNT XI

### (Infringement of the '243 Patent)

238.    AutoConnect restates and realleges all the foregoing paragraphs as if fully stated herein.

239.    On information and belief, Toyota has directly infringed and continues to directly infringe one or more claims of the '243 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because they have made, used, sold, offered for sale, and/or imported and are currently making, using, selling, offering for sale, and/or importing vehicles, vehicle systems (including in-vehicle multimedia systems), mobile applications (including the Toyota App), and hardware and software components thereof, including non-transitory computer-readable media that store computer-executable instructions and hardware and software that enable User Profiles in Toyota vehicles, in all makes and models from the 2022 model year to the present, including those listed in Exhibit K2 ("the '243 Accused Instrumentalities").  Toyota has also directly infringed and continues to directly infringe one or more claims of the '243 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, because Toyota operates and controls the '243 Accused Instrumentalities by virtue of, for example, designing, programing, building, maintaining, and updating the '243 Accused Instrumentalities to perform one or more method claims of the '243 patent.

240.    Attached to this Complaint as Exhibit K3 is a representative chart that, on information and belief, describes how, as a non-limiting example, the elements of exemplary claims 1 and 11 of the '243 patent are met by the '243 Accused Instrumentalities.  On information and belief, Toyota's source code and/or other non-public documentation will also confirm that Toyota's '243 Accused Instrumentalities have met and currently meet the elements of one or more claims of the '243 patent, as discussed herein and in Exhibit K3.

241.    Toyota's infringement of the '243 patent has also been indirect.

242.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe one or more claims of the '243 patent under 35 U.S.C. § 271(b) because they have induced, and continue to induce, third parties (including dealerships, customers, and other end-users), to make and/or use the '243 Accused Instrumentalities.  Such making and/or using by third parties constitutes direct infringement of one or more claims of the '243 patent.

243.    For example, Toyota has supplied, and continues to supply, such induced third parties with vehicles, instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to use the '243 Accused Instrumentalities, with knowledge that usage in accordance with their instructions directly infringed/infringes at least claim 1 of the '243 patent, or with willful blindness to that fact.[33]  On information and belief, Toyota will continue to encourage, aid, or otherwise cause these third parties to, for example, use their '243 Accused Instrumentalities in ways that directly infringe the '243 patent, and Toyota has and will continue to encourage these acts with the specific intent to infringe the '243 patent.  Further, Toyota provides information and technical support to their dealerships, customers, and other end-users, including manuals, brochures, documentation, tutorials, videos, demonstrations, website materials, and promotional materials encouraging them to purchase and to use Toyota's '243 Accused Instrumentalities with knowledge that such use constitutes an act of direct infringement of the '243 patent.[34]

---

[33] *E.g.*, https://support.toyota.com/s/article/Toyota-App-User-Profi-10737?language=en_US#:~:text=How%20do%20I%20reset%20my,vehicle%20if%20it%20was%20saved.

[34] *E.g.*, https://support.toyota.com/s/article/Toyota-App-User-Profi-10735?language=en_US#:~:text=a%20User%20Profile?-,A%20User%20Profile%20is%20created%20when%20you%20register%20an%20account,is%20loaded%20to%20the%20vehicle; https://support.lexus.com/s/article/How-do-I-load-my-saved-profile.

Alternatively, Toyota has acted with willful blindness to these facts. On information and belief, Toyota knows that there is a high probability that the use of Toyota's '243 Accused Instrumentalities constitutes direct infringement of the '243 patent but took deliberate actions to avoid learning of these facts.

244.    On information and belief, Toyota has been aware of the inventions described and claimed in the '243 patent since at least shortly after the issuance of the '243 patent in July 2024, or was willfully blind to the existence of the patent.

245.    On information and belief, Toyota has known that the making and/or using of their '243 Accused Instrumentalities constitutes an act of direct infringement of the '243 patent. On information and belief, Toyota obtained this knowledge at least since July 2024. To the extent Toyota did not have actual knowledge of its infringement, Toyota's lack of actual knowledge is due to their deliberate decision to avoid learning of these facts. Toyota, therefore, had knowledge that the making and/or using of Toyota's '243 Accused Instrumentalities by their dealerships, customers and/or other end users infringes the '243 patent or Toyota was otherwise willfully blind to that fact.

246.    On information and belief, Toyota has indirectly infringed and continues to indirectly infringe the '243 patent under 35 U.S.C. § 271(c) because they have contributed to direct infringement, and continue to contribute to direct infringement, by third parties (including dealerships, customer and end users), of at least claim 1 of the '243 patent. For example, Toyota has sold, offered for sale, and/or imported into the United States and is currently selling, offering for sale, and/or importing into the United States components of the '243 Accused Instrumentalities (including vehicle software components associated with enabling User Profiles in Toyota vehicles) to these third parties with full knowledge of the '243 patent. These third

parties have assembled the components to make and use the '243 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile applications, website materials, promotional materials and the like that instructed/instruct them how to assemble and use the components of the '243 Accused Instrumentalities in ways that infringed/infringe the '243 patent.[35]  Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.  Further, Toyota's components constituted/constitute a material part of the inventions claimed in the '243 patent. Toyota supplied/supplies these components with knowledge of the '243 patent and knowledge that the components were especially made for use in an infringing manner.

247.    On information and belief, Toyota has also indirectly infringed and continues to indirectly infringe the '243 patent under 35 U.S.C. § 271(f)(2) by supplying in or from the United States, one or more components of the '243 Accused Instrumentalities to third parties (including their foreign subsidiaries, dealerships, customers, and other end users), and intending these third parties combine the components in a manner that would directly infringe at least claim 1 of the '243 patent if such combination occurred within the United States.  For example, Toyota has supplied, and continues to supply, such third parties outside of the United States with one or more components of the '243 Accused Instrumentalities (including vehicle software components associated with enabling User Profiles in Toyota vehicles) with full knowledge of the '243 patent.  These third parties have made or used the '243 Accused Instrumentalities according to instructions, manuals, brochures, documentation, tutorials, videos, mobile

---

[35] *E.g.*, https://support.toyota.com/s/article/Toyota-App-User-Profi-10735?language=en_US#:~:text=a%20User%20Profile?-,A%20User%20Profile%20is%20created%20when%20you%20register%20an%20account,is%20loaded%20to%20the%20vehicle; https://support.lexus.com/s/article/How-do-I-load-my-saved-profile

applications, website materials, promotional materials and the like that instructed/instruct them how to combine the components of the '243 Accused Instrumentalities and use them in ways that would infringe the '243 patent if such combination occurred within the United States. Toyota provides these instructions to the third parties with the knowledge that assembly and usage in accordance with their instructions would infringe the '243 patent if such assembly and usage took place in the United States. Additionally, Toyota's components are especially made and/or especially adapted for use in an infringing manner and Toyota's components were and are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

248.    On information and belief, Toyota's actions demonstrate an intent not only to have caused the acts described herein that form the basis of direct infringement by third parties (or would form the basis of direct infringement if they occurred within the United States), but also that they caused these acts with the specific intent to infringe the '243 patent. At a minimum, Toyota's conduct demonstrates that Toyota either knew or should have known that the acts of such third parties directly infringed/infringe the '243 patent (or would have infringed if those acts occurred within the United States).

249.    Moreover, on information and belief, Toyota's infringement of the '243 patent has been and continues to be willful and merits enhanced damages.

250.    For example, Toyota has known of the '243 patent and its infringement of the '243 patent as described herein.

251.    On information and belief, since knowing of the '243 patent and its infringement thereof, Toyota has not taken any affirmative steps to avoid infringing the '243 patent.

252.    On information and belief, Toyota has made no attempt to design around the claims of the '243 patent.

253.    On information and belief, Toyota has no reasonable basis for believing that the claims of the '243 patent are either invalid or not infringed by the '243 Accused Instrumentalities and/or or its activities concerning the '243 Accused Instrumentalities.

254.    AutoConnect has been damaged as the result of Toyota's willful infringement.

255.    On information and belief, Toyota will continue to infringe one or more claims of the '243 patent unless and until it is enjoined by this Court.

256.    On information and belief, Toyota has caused and will continue to cause AutoConnect irreparable injury and damage by infringing the '243 patent.  AutoConnect will suffer further irreparable injury and damage, for which it has no adequate remedy at law, unless and until Toyota is enjoined from infringing the claims of the '243 patent.

## JURY DEMAND

257.    AutoConnect requests a jury trial as to all issues that are triable by a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, AutoConnect respectfully requests that this Court:

A.    Enter judgment that Toyota has infringed one or more of the claims of each of the Asserted Patents;

B.    Enter an order permanently enjoining Toyota and its officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, from infringing the Asserted Patents;

C.    Award AutoConnect all appropriate damages for the infringement of the Asserted Patents, including pre-judgment and post-judgment interest, costs, and all other relief permitted under 35 U.S.C. § 284;

D.      Award AutoConnect an accounting for acts of infringement not presented at trial, including an award of additional damages for such acts of infringement;

E.      Enter judgment that Toyota's infringement of each of the Asserted Patents has been deliberate and willful;

F.      Treble the damages awarded to AutoConnect under 35 U.S.C. § 284 by reason of Toyota's willful infringement of one or more claims of each of the Asserted Patents;

G.      Declare this case to be "exceptional" under 35 U.S.C. § 285 and award AutoConnect its attorneys' fees, expenses, and costs incurred in this action; and

H.      Award AutoConnect such other and further relief at law or in equity as the Court deems just and proper.

DATED: October 3, 2024

By: *s/ William R. Woodford by permission Andrea L. Fair*

William R. Woodford (*pro hac vice* forthcoming)
Todd S. Werner (*pro hac vice* forthcoming)
Jason M. Zucchi (*pro hac vice* forthcoming)
**AVANTECH LAW, LLP**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Phone: (612) 895-2721
woodford@avantechlaw.com
werner@avantechlaw.com
zucchi@avantechlaw.com

*Of Counsel:*

Andrea Fair
Texas Bar No. 24078488
MILLER FAIR HENRY PLLC
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323
andrea@millerfairhenry.com

***Attorneys for Plaintiff***
***AutoConnect Holdings LLC***