**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| AUTOCONNECT HOLDINGS LLC, | § | |
| *Plaintiff*, | § | |
| | § | Case No. 2:24-cv-00802-JRG-RSP |
| v. | § | |
| | § | (Lead Case) |
| TOYOTA MOTOR CORPORATION, ET. AL, | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATION

Before the Court is Defendants Toyota Motor Corp., Toyota Motor North America, Inc., and Toyota Motor Sales, U.S.A., Inc.'s ("Toyota") Motion for Summary Judgment Regarding the Taurus License Defense. **Dkt. No. 216**. In their Motion, Toyota contends that because the Asserted Patents are encumbered by a license to Toyota, they "cannot be held liable for infringement in this case." *Id.* at 3. Having considered the Motion, and for the reasons discussed below, the Court finds that Toyota's Motion should be **GRANTED**.

## I.      BACKGROUND

Plaintiff AutoConnect Holdings LLC accuses Toyota of infringement of U.S. Patent Nos. 9,020,491 ("the '491 patent), 9,020,697 ("the '697 patent), 9,123,186 ("the '186 patent"), 9,140,560 ("the '560 patent), 9,290,153 ("the '153 patent"), and 10,862,764 ("the '764 patent) ("the Asserted Patents"). Dkt. No. 299 at 4. The Asserted Patents are generally directed at vehicle infotainment systems.

### A.      Taurus License

The Taurus License arises from prior litigation between Toyota and Taurus IP, LLC in the Western District of Wisconsin. *See Chrysler, LLC and Mercedes-Benz v. Orion IP, LLC and Erich Spangenberg*, Case No. 3:07-cv-00158-BBC (W.D. Wis.) ("Wisconsin Case"). The Wisconsin

Case settled as to the Toyota Defendants, and a license agreement was executed in 2007 with the Toyota Defendants for "any and all patents ever owned or currently owned or which may be acquired by a Spangenberg and/or a Spangenberg Related Entity."  *See* Dkt. No. 216-2 at 2. Covered by the Agreement were 29 Toyota related entities, including all 3 of the named Toyota Defendants in the current case. Dkt. No. 216-2 at 16. The Agreement defined "Spangenberg Related Entity" as "any person or entity owned or controlled, directly or indirectly, by Erich Spangenberg or any member of his immediate family." *Id.* at 18. The Agreement defined "Spangenberg and Spangenberg Related Entities Patents" as:

> (i) at any time, any and all Patents owned by or assigned to a Spangenberg or a Spangenberg Related Entity or for which a Spangenberg or a Spangenberg Related Entity has the right to assert infringement, (ii) any and all Patents existing or subsequently issuing from applications from which the Patents referenced in (i) claim priority for which a Spangenberg or a Spangenberg Related Entity has the right to assert infringement, and (iii) any and all Patents existing or subsequently issuing from continuations, divisionals, continuations-in-part, reexaminations, reissues, extensions, and renewals of any Patents referenced in (i) or (ii) for which a Spangenberg or a Spangenberg Related Entity has the right to assert infringement. *Id.* at 3.

The agreement required 3 initial annual payments and 7 optional annual renewal payments to Taurus. *Id.* at 18.  After the tenth payment "the license is fully paid up and irrevocable." *Id.*

### B.    IP Optimum Sale

AutoConnect and IP Optimum Ltd. entered a "Patent Purchase Agreement" on May 15, 2019, which transferred a patent portfolio from AutoConnnect to IP Optimum. *See* Dkt. No. 216-3. The Parties do not dispute that this portfolio contains all the Asserted Patents, nor do they dispute the transfer dates. *See* Dkt. No. 216 at 4; Dkt. No. 233 at 4. On March 27, 2020, this portfolio was transferred back to AutoConnect. *Id.* In the instant Motion, the Parties dispute whether Mr. Spangenberg held sufficient control over Optimum IP during this time period for the Asserted Patents to constitute "Spangenberg and Spangenberg Related Entities Patents."

2

## II.    LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any evidence must be viewed in the light most favorable to the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when there is no genuine dispute of material fact. *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of material fact." *Anderson*, 477 U.S. at 247–48 (emphasis added). The substantive law identifies the material facts, and disputes over facts that are irrelevant or unnecessary will not defeat a motion for summary judgment. *Id.* at 248. A dispute about a material fact is "genuine" when the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party must identify the basis for granting summary judgment and evidence demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323.

If the movant bears the burden of proof on an issue at trial, then the movant "must establish beyond peradventure all of the essential elements of the claim or defense to warrant [summary] judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

III.     **ANALYSIS**

A.     **Motion to Amend Answer (Dkt. No. 138)**

At the June 16, 2026, pre-trial conference held in the above-captioned case, the Court orally granted Toyota's Motion to Amend Answer (Dkt. No. 138). Therefore, Toyota's License Motion is properly raised before the Court.

B.     **License Validity**

Toyota argues that while the "version Toyota found in its files is only signed by [Toyota] and not Mr. Spangenberg, there is overwhelming evidence that the agreement was, in fact, fully executed and honored by all parties," including Mr. Spangenberg. Dkt. No. 216 at 6. Toyota notes that under Texas law, the intent of the parties to be bound by an agreement can overcome a contract's lack of signature. *Id.* at 6-7. Toyota points to several pieces of evidence that indicate such agreement:

- A term sheet, signed by Mr. Spangenberg, which "mirrors the key terms of the Taurus License." *Id.* at 7.

- Wire invoices sent to Toyota, from 2008-2011 "Pursuant to the Patent License Agreement dated August 31, 2007." *Id.* (*citing* Dkt. No. 216-6, 7, 8). The 2011 invoice includes a signed letter from Mr. Spangenberg and states that "This letter is sent pursuant to that Patent License Agreement between Taurus IP, LLC, Erich Spangenberg and Toyota Motor Sales U.S.A., Inc. dated August 31, 2007." *Id.* (citing Dkt. No. 216-9 at 503-504).

- Bank records from Toyota, which identify annual payments from 2010-2016 for the contracted amount. *Id.* at 8 Toyota notes that they have no such records for the 2007-2009 payments.

Toyota concludes that this evidence indicates that "Toyota made all ten payments required for a paid-up license under the Taurus License." *Id.* at 9.

4

Plaintiff's response raises two issues with Toyota's argument.[1] First, Plaintiff points to Toyota's inability to produce a Taurus License Agreement signed by Mr. Spangenberg. Dkt. No. 233 at 6. Plaintiff notes that the signed term sheet does not state that it is binding, and points to testimony by Toyota's expert which states the same. *Id.* at 7. Plaintiff concludes that this "course-of-conduct" evidence does not "does not prove that Spangenberg signed Toyota's unsigned copy" or "that the parties did not revise the draft," and instead argues that a "trial" dispute remains over whether the Taurus Agreement was properly executed. *Id.* Second, Plaintiff argues that Toyota has not proven that it made all 10 payments under the agreement. *Id.* Plaintiff notes that for 2007-2009, no wire records exist, and that for the 2010 payment, it is listed as the "3rd payment" rather than "the fourth payment as Toyota contends." *Id.*

Turning first to Plaintiff's "signature" argument, the Court finds that whether or not Toyota has produced a copy of the Taurus Agreement signed by Mr. Spangenberg, the conduct of the parties establishes that it was the intent of all contracting parties, including Mr. Spangenberg, to be bound by the Agreement. The Fifth Circuit has found that under Texas law a "signature block by itself is insufficient to establish the parties' intent to require signatures," however, further contractual "language that the parties needed to sign the agreement to give it effect or to modify it" is sufficient to establish such intent. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018). In *Trujillo v. Volt Mgmt. Corp.*, relied on by Toyota, the Fifth Circuit affirmed a district court's finding that an employee arbitration agreement left unsigned by the employee was binding, based on circumstantial evidence. 846 F. App'x 233, 236 (5th Cir. 2021).[2] The Parties here identify

---

[1] In its Motion, Toyota argues that in the absence of a choice of law provision, Texas law applies. Dkt. No. 216 at 5-6. Plaintiff's response does not address the choice of law issue. Under Fifth Circuit precedent "[i]f the laws of the states do not conflict, then no choice-of-law analysis is necessary," and we simply apply the law of the forum state. *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005). Since no choice-of-law conflicts are raised by Plaintiff, the Court applies Texas contract law.

[2] The District Court found "(1) that [Trujillo] completed and submitted the job application that contained an arbitration agreement; (2) that [Trujillo] accepted employment with Volt knowing that, as a condition of employment, [Trujillo]

no contractual language that indicates a signature is required to execute the Taurus Agreement.[3] While Plaintiff is correct that Toyota's circumstantial evidence does not indicate that Mr. Spangenberg "signed Toyota's unsigned copy," Plaintiff fails to overcome Toyota's evidence which indicates Mr. Spangenberg's assent, *despite* his signature. While not directly binding to the Parties, the Agreement states that the attached term sheet, signed by Mr. Spangenberg and Toyota, reflects the "material terms of their agreement." Dkt. No. 216-2 at 2. From 2007 to 2016, when the final payment was due, Taurus IP, LLC and Mr. Spangenberg complied with their contractual requirements to inform Toyota of new patents acquired by Mr. Spangenberg and sent invoices for the annual amount due. Neither party provides any evidence that Toyota failed to comply with the Agreement, nor of any enforcement actions by Taurus IP, LLC or Mr. Spangenberg. Taken together, the Court finds that this establishes assent by Mr. Spangenberg. Mr. Spangenberg negotiated this Agreement with full knowledge of its contents, and like *Trujillo*, Mr. Spangenberg continued to perform his duties under the Agreement, despite his alleged non-signature. Therefore, the Court finds that regardless of whether Mr. Spangenberg actually signed the Taurus Agreement, his post-contract behavior indicates that he agreed to the Agreement's terms.

The Court likewise rejects Plaintiff's "proof of payment" argument. For summary judgment, the moving party must demonstrate that "no genuine dispute of material fact" exists – that no "reasonable jury could return a verdict for the nonmoving party." *See* § II (Legal Standard). The Fifth Circuit holds that unsubstantiated assertions, improbable inferences, and unsupported speculation are insufficient to preclude summary judgment. *Brown v. City of Houston*, 337 F.3d

---

would agree to submit her claims to arbitration; (3) that [Trujillo] continued working for Volt after receiving the Alternative Dispute Resolution policy as part of Volt's employee handbook; [and] (4) that [Trujillo's] employment claims fall within the scope of the arbitration agreement," indicated Trujillo's agreement to the arbitration clause.

[3] The Court notes that since the Taurus Agreement's "Counterparts" clause permits "execution in counterparts or duplicate originals" and may be "executed by facsimile signatures," the document produced by Toyota, with Toyota's but not Mr. Spangenberg's signature, is contemplated by the Agreement. Dkt. No. 216-2 at 14.

539, 541 (5th Cir. 2003). In its reply, Toyota argues that it is "inconceivable" that "Toyota nearly reached an agreement with Mr. Spangenberg in 2007, did nothing for three years, and then in 2010 began paying him [the invoiced amount] every August for seven straight years" pursuant to "payment terms in a non-existent agreement." Dkt. No. 249 at 3. The Court agrees. While Plaintiff argues that the lack of wire records for the 2007-2009 payments raise a genuine dispute of material fact precluding summary judgment, Plaintiff fails to consider the annual invoices sent by Taurus IP, LLC, the lack of enforcement for alleged non-payment, and the "Pursuant to the Patent License Agreement dated August 31, 2007" language on each invoice from 2007 to 2010. The Court finds that taken together; no reasonable jury could find that this gap in wire records overcomes this overwhelming evidence that the Taurus Agreement is fully paid. Therefore, the Court finds that for Toyota, the Taurus Agreement is valid.[4]

### C.    Spangenberg Related Entities

Toyota first notes that the Parties do not dispute that on May 15, 2019, the AutoConnect patent portfolio, which includes the Asserted Patents and/or their underlying applications, was transferred to IP Optimum, and on March 27, 2020, transferred back to AutoConnect. Dkt. No. 216 at 9; Dkt. No. 233 at 4.

Toyota argues that during this time, Mr. Spangenberg, and his primary company IPwe, controlled IP Optimum, either "directly or indirectly." Dkt. No. 216 at 9. Toyota notes that IP Optimum was formed on May 13, 2019, two days prior to the AutoConnect portfolio acquisition, IPwe "made all the controlling patent prosecution decisions" and paid all prosecution fees for the portfolio. *Id.* at 9-10. Toyota points to correspondence with Mr. Spangenberg as evidence of his

---

[4] The Court likewise rejects Plaintiff's argument that "Toyota's 2010 wire record states it's the '3rd' payment, not the fourth payment as Toyota contends" indicates non-payment or invalidity as unsubstantiated and unsupported speculation.

personal involvement in IP Optimum. *Id.* at 10. Toyota notes that AutoConnect referred to IP Optimum as "Erich's group" and the 2019-2020 IP Optimum ownership period as "the period when Erich's group (IP Optimum / Darren Auito) was in control of the portfolio." *Id.* Toyota argues that since this evidence indicates direct or indirect control of IP Optimum by Mr. Spangenberg, the Asserted Patents are covered under the Taurus License. *Id.* Finally, Toyota argues that since the 2020 re-assignment agreement transferred the portfolio back "without any representations or warranties of any nature or type whatsoever," the Taurus License remains attached to the Asserted Patents. *Id.* at 11.

Plaintiff argues that since Mr. Spangenberg and IPwe were merely a "transactional intermediary," rather than an "owner, affiliate, or party – 'directly or indirectly' – to the PPA 'for any purpose'" of IP Optimum, the Taurus License does not attach during the 2019-2020 IP Optimum ownership period. Dkt. No. 233 at 8. Plaintiff notes that James Murphy, not Mr. Spangenberg, was "IP Optimum's owner, CEO, sole shareholder, and director," and adds that Toyota has produced no evidence that Mr. Spangenberg held any "ownership, voting rights, governance authority, or the right to appoint or remove IP Optimum's management." *Id.*

Plaintiff argues that regardless of Mr. Spangenberg's control, since the Taurus License's annual patent disclosures never listed the Asserted Patents during the 2019-2020 IP Optimum ownership period, nor were they disclosed upon their re-assignment to AutoConnect, the Asserted Patents are not covered under the Taurus License. *Id.* at 10. Plaintiff concludes that since the Asserted Patents were never covered under the Taurus License, the License cannot attach. *Id.*

Toyota's reply argues that Mr. Murphy merely served as an "Irish figurehead" to permit IP Optimum's incorporation in Ireland. Dkt. No. 249 at 4. Toyota adds that "Mr. Spangenberg chose that it be located in Ireland to achieve tax advantages for himself." *Id.* Toyota concludes that Mr.

8

Spangenberg's heavy administrative involvement in IP Optimum, despite Mr. Murphy's ownership, indicates control sufficient to establish it as a "Spangenberg Related Entity under the terms of the Taurus License." *Id.* at 5.

The Court finds that IP Optimum is a Spangenberg Related Entity, and thus the Asserted Patents are covered under the Taurus License. While neither Party disputes that Mr. Murphy, not Mr. Spangenberg, is "IP Optimum's owner, CEO, sole shareholder, and director," the Taurus License attaches to patents *indirectly* controlled by Mr. Spangenberg. While Irish law heavily restricts Mr. Spangenberg's formal involvement with IP Optimum, Plaintiff's response fails to consider that IP Optimum was Mr. Spangenberg's idea, Mr. Spangenberg's correspondence with AutoConnect, and Mr. Spangenberg's payment of maintenance fees for the AutoConnect portfolio. The Taurus Agreement is intentionally broad – to make "litigation peace" between Toyota and "any person or entity owned or controlled, directly or indirectly, by Erich Spangenberg or any member of his immediate family." Toyota's evidence overwhelmingly shows *indirect* control of IP Optimum by Mr. Spangenberg, despite Mr. Murphy's nominal ownership.[5] Therefore, the Court finds IP Optimum to constitute a "Spangenberg Related Entity" under the Taurus License.

Finally, the Court finds that the Taurus License continues to encumber the AutoConnect portfolio, despite IP Optimum's re-assignment. Section 7.3 of the Taurus Agreement prohibits assignment of "Spangenberg and Spangenberg Related Entities Patents" without encumbrance of

---

[5] The Court likewise rejects Plaintiff's "disclosure" argument. *See* Dkt. No. 233 at 10. While the Taurus Agreement merely required annual disclosures of covered patents, it was Mr. Spangenberg's duty, not Toyota's, to make these annual disclosures. At best, Plaintiff's argument merely admits a failure to disclose. Furthermore, the § 2.4 "Notification" clause cited by Plaintiff only applies when "TMS believes that Spangenberg or a Spangenberg Related Entity" sues a party covered by the Agreement. Neither Party provides any indication any "Spangenberg or a Spangenberg Related Entity" has sued any "Covered Party."

this agreement.[6] *See* Dkt. No. 216-2 at 9. Since neither Party provides evidence of non-encumbrance of the Taurus Agreement, the Court finds it remains attached.

Since IP Optimum is a "Spangenberg Related Entity" under the Taurus License, and the AutoConnect Portfolio, including all asserted patents remains encumbered by the Taurus Agreement, the Court finds that Toyota has a license to the Asserted Patents.

## IV.    CONCLUSION

Having considered the Motion, and for the reasons discussed above, the Court finds that Defendant Toyota's Motion should be **GRANTED**.

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 9th day of July, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[6] Plaintiff's response does not directly address Toyota's encumbrance argument. Instead, Plaintiff argues that since there is no license, there is no encumbrance.

10