**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AUTOCONNECT HOLDINGS LLC,<br><br>Plaintiff,<br>v.<br><br>TOYOTA MOTOR CORPORATION, et al.<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:24-cv-00802-JRG-RSP<br>(Lead Case) |
| AUTOCONNECT HOLDINGS LLC,<br><br>Plaintiff,<br><br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:24-cv-00877-JRG-RSP<br>(Member Case) |

**TOYOTA'S SURREPLY TO AUTOCONNECT'S**
**REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION AND**
**LEAVE TO SUPPLEMENT THE SUMMARY JUDGMENT RECORD**

AutoConnect's reply provides no credible explanation for why it waited so long to reach out to Mr. Spangenberg, *its own former business partner*. It provides no other version of the Taurus License from Mr. Spangenberg. It contains no responsive declaration from Mr. Spangenberg explaining why the version Toyota produced is not the final signed version, even though Toyota gave permission to share the Taurus License with Mr. Spangenberg. It cites no new evidence that was previously unavailable, instead repeating the same argument that Mr. Spangenberg did not "own" IP Optimum and merely provided management services. In short, nothing in AutoConnect's reply warrants reconsideration of the Court's order.

## I. Rule 59(e) Factors Are Appropriate Here, and AutoConnect's Recycled Arguments Do Not Justify Reconsideration

AutoConnect overlooks that, post-*Austin*, this Court continues to rely on Rule 59(e) factors in deciding motions for reconsideration under Rule 54(b). *See Nanoco Techs. Ltd. v. Samsung Elecs. Co., Ltd.*, Case No. 2:20-cv-00038-JRG, 2022 WL 18304143, *1 (E.D. Tex. Aug. 10, 2022); *Commc'n Techs., Inc. v. Samsung Elecs. Am., Inc.*, No. 2:21-CV-00444-JRG, 2025 WL 1538745, at *3 (E.D. Tex. May 29, 2025); *see also Goosehead Ins. Agency, LLC v. Williams Ins. & Consulting, Inc.*, 533 F. Supp. 3d 367, 379-80 (N.D. Tex. 2020) (citing *Austin* and noting that Rule 59 considerations, while not limiting, remain "guideposts" that "are informative to the Court's reconsideration" under Rule 54(b)). Indeed, *Austin* did not eliminate the relevance of Rule 59(e) factors; it merely confirmed the Court's discretion in evaluating non-final orders. *See United States v. 89.9270303 Bitcoins*, No. SA-18-CV-0998-JKP, 2021 WL 5203337, at *1 (W.D. Tex. Nov. 8, 2021) (recognizing that *Austin*'s "flexible approach permits [courts] to require showing of one or more" Rule 59(e) considerations, "[s]o long as courts recognize that they have the discretion to grant reconsideration even in the absence of any such showing" (citations omitted)).

Regardless of whether the Rule 59(e) factors apply, AutoConnect provides no basis for revisiting this Court's decision. AutoConnect never demonstrates how Mr. Spangenberg's post hoc declaration warrants a different outcome, particularly where he simply repackages arguments that this Court has already considered and rejected. *See* Dkt. 327 ("Opp."), 13-15; *infra* §§ II-III.

## II. AutoConnect's Tactical Decision Not to Contact Mr. Spangenberg Until After the Pretrial Conference Cannot Be Blamed on Toyota

AutoConnect continues to assert that Toyota "[p]revented" Mr. Spangenberg's deposition. Dkt. 333 ("Reply"), 2. Toyota did no such thing. Defendants attempted to subpoena Mr. Spangenberg (he claims he "was not personally served," Dkt. 323-010, ¶ 8), informed AutoConnect that he was not represented, and ultimately decided not to pursue a deposition. This is routine discovery conduct, similar to how AutoConnect opted not to pursue depositions of Google and Denso after subpoenaing them, without informing Toyota of this decision. Toyota never "prevented" AutoConnect from issuing its own subpoena or reaching out to Mr. Spangenberg via email, as it did in 2022 in preparation for this lawsuit. AutoConnect does not deny that it knew how to contact Mr. Spangenberg and knew from experience that he responded quickly. After all, AutoConnect and Mr. Spangenberg were previously in business together.

AutoConnect contends that Toyota's "representations concealed that Toyota had decided not to proceed" with Mr. Spangenberg's deposition. Reply, 2. To the contrary, Toyota informed AutoConnect that, "[a]s far as we know, Mr. Spangenberg is not represented by counsel, and there is no deposition currently scheduled." Dkt. 324-007 at 4. Toyota never prevented or dissuaded AutoConnect from issuing its own subpoena or simply contacting Mr. Spangenberg (as it clearly knew how to do) to inquire about a potential deposition.[1]

---

[1] Moreover, by April 10, AutoConnect had Toyota's correspondence with Mr. Spangenberg, yet it *still* waited until July 5 to reach out to him. AutoConnect cannot blame Toyota's statements in February for AutoConnect's decision to wait until July to contact Mr. Spangenberg.

AutoConnect repeats its claim that the parties "agreed . . . to exchange communications with third-party witnesses." Reply, 2. As Toyota has explained, that alleged agreement consists of GM asking AutoConnect to agree to this and AutoConnect failing to do so. *See* Opp., 7 (citing Dkt. 323-005). Indeed, AutoConnect has *still* not produced its communications with third parties it subpoenaed but chose not to depose, such as Google and Denso. And it did not produce its exchange with Mr. Spangenberg containing his redlines to the declaration AutoConnect drafted for him until after Toyota demanded it. AutoConnect attempts to treat the Google and Denso subpoenas differently because they were "technical," Reply, 2-3, but that is a distinction without a difference. In any event, Toyota produced its communications with Mr. Spangenberg as soon as AutoConnect requested them, and AutoConnect cited these communications extensively in its summary judgment briefing. *See, e.g.*, Dkt. 233 at 2, 9; Dkt. 246 at 4-5; Dkt. No. 266 at 1, 3-4.

## III. AutoConnect Offers No Explanation as to Why It Did Not Obtain the "Facts" Alleged in Mr. Spangenberg's Declaration During Fact Discovery

AutoConnect turns again to Mr. Spangenberg's declaration but provides no argument as to why any of the purported "facts" were previously unavailable. AutoConnect reiterates that Mr. Spangenberg's declaration shows that he simply "coordinated" the deal and then "provided patent administration and monetization services." Reply, 3. These were substantially the same facts that the parties presented to the Court and upon which the Court found Mr. Spangenberg to be sufficiently in control of IP Optimum to render it a Spangenberg Related Entity. *See* Dkt. 219 at 13; Dkt. 233 at 5, 8-9; Dkt. 246 at 3; *see also* Dkt. 317 at 7-10. They are not new facts, and they certainly were not previously unavailable to AutoConnect.

## IV. AutoConnect Raises Spurious Allegations That Are Both Incorrect and Irrelevant

AutoConnect attempts to muddy the waters by incorrectly asserting that Toyota has raised a new "claim that Granicus owned IP Optimum." Reply, 1. But Toyota never relied on Granicus

as an "owner" of IP Optimum in its motion, nor does it do so now. *See* Dkt. 216. Toyota merely explained that when it first reached out to Mr. Spangenberg, he said his company Granicus was IP Optimum's sole shareholder. Opp., 8 (citing Dkt. 323-008). But when he could not provide documentation showing this ownership, Toyota focused on Mr. Spangenberg's *control* of IP Optimum, which is abundantly clear from contemporaneous documents. That a $25,000 payment—the precise amount called for in the AutoConnect-IP Optimum agreement—landed in AutoConnect's bank account from "Granicus IP LLC" just seven days after the AutoConnect-IP Optimum agreement (Dkt. 327-006) only underscores Mr. Spangenberg's control over IP Optimum. And it contradicts Mr. Spangenberg's latest portrayal of himself as merely a "broker" and of James Murphy as an "investor." Dkt. 324-010 at ¶¶ 5, 44. As recognized in this Court's order, Toyota relied on contemporaneous emails from Mr. Spangenberg and from AutoConnect itself to show that Mr. Spangenberg *controlled* (not owned) IP Optimum. Dkt. 317 at 7-10. Whether Granicus owned IP Optimum (which may indeed be true) is irrelevant to Toyota's argument and the Court's ruling.

AutoConnect criticizes Toyota again for not asking Mr. Spangenberg directly whether he controlled IP Optimum or had a copy of the Taurus agreement. Reply, 4. But AutoConnect offers no rebuttal to Toyota's rationale, i.e., that because Toyota assumed Mr. Spangenberg was still actively working with AutoConnect (as he had in 2022 in preparation for this lawsuit), Toyota was naturally circumspect about disclosing sensitive information about its defenses and litigation strategy to him. Toyota sought information *only* about IP Optimum's ownership.

AutoConnect claims Toyota has "denied Spangenberg access to the document at issue," i.e., the Taurus License. Reply, 4. This is incorrect. AutoConnect fails to mention that on July 29, Toyota *expressly gave AutoConnect permission* to show Toyota's copy of the Taurus License to

Mr. Spangenberg. Ex. 7. Presumably, AutoConnect did so before filing its reply brief on August 7.[2] Yet AutoConnect offers no rebuttal declaration from Mr. Spangenberg. One can only assume, therefore, that after reviewing Toyota's copy of the Taurus License, Mr. Spangenberg agreed that it is, in fact, the operative agreement.

## V. AutoConnect's "Authority" Argument Is Untimely and Insufficient

AutoConnect's "authority" argument is not only new, as explained in Toyota's response, it is also insufficient. The evidence overwhelmingly shows that Mr. Spangenberg *controlled* IP Optimum, making it a Spangenberg Related Entity. Thus, even if Mr. Spangenberg did not have "authority" to grant a license—a point Toyota disputes—the Taurus License states that "Spangenberg and ***the Spangenberg Related Entities each hereby grant*** to TMS" a license to their patents. Dkt. 216-002 at § 3.2 (emphasis added). So, even if Mr. Spangenberg could not himself license the patents, Toyota is still licensed because: (1) IP Optimum had the authorization to grant a license to Toyota, and (2) the grant clause of the Taurus License operates *automatically* to grant such a license because IP Optimum is a "Spangenberg Related Entity." AutoConnect's reply does not even address this point. AutoConnect argues only that Mr. Spangenberg did not have authority to grant a license, but it ignores that IP Optimum itself had the authority to do so and the terms of the Taurus License ***automatically*** granted this license because IP Optimum was a Spangenberg Related Entity and, by definition, under Mr. Spangenberg's control.

## VI. Conclusion

For all the reasons described above and in Toyota's opposition, AutoConnect's motion should be denied.

[2] If it did, AutoConnect has yet to produce any such third-party correspondence to Toyota.

Dated: August 14, 2026

Respectfully submitted,

*/s/ James R. Barney*
James R. Barney (LEAD) (DC Bar No. 473732)
Jason L. Romrell (admitted pro hac vice)
Jonathan J. Fagan (admitted pro hac vice)
Alexander E. Harding (admitted pro hac vice)
Deena Kablaoui Lanier (admitted pro hac vice)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Tel. (202) 408-4000

Aidan C. Skoyles (admitted pro hac vice)
Robert J. Evans (admitted pro hac vice)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190 Tel (571) 203-2700

Michael E. Kudravetz (admitted pro hac vice)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
Two Seaport Lane, Sixth Floor
Boston, MA 02210 Tel (617) 646-1600

Melissa R. Smith State Bar No. 24001351
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, Texas 75670
Tel: (903) 934-8450
melissa@gillamsmithlaw.com

Matt Berkowitz
Reichman Jorgensen Lehman & Feldberg LLP
100 Marine Parkway, Suite 300
Redwood Shores, CA 94065
Tel. (650) 560-3501

Patrick R. Colsher
Reichman Jorgensen Lehman & Feldberg LLP
400 Madison Ave, Suite 14d
New York, NY 10017
Tel. (650) 623-1423

*Counsel for Defendants Toyota Motor Corp., Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor Sales, U.S.A., Inc.*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on August 14, 2026, a true and correct copy of the above document was filed with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ James R. Barney*
James R. Barney