**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AUTOCONNECT HOLDINGS LLC,<br><br>Plaintiff,<br>v.<br><br>TOYOTA MOTOR CORPORATION, et al.,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:24-cv-00802-JRG-RSP<br>(Lead Case) |
| AUTOCONNECT HOLDINGS LLC,<br><br>Plaintiff,<br>v.<br><br>GENERAL MOTORS LLC,<br><br>Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:24-cv-00877-JRG-RSP<br>(Member Case) |

**AUTOCONNECT'S OBJECTIONS TO THE COURT'S REPORT AND RECOMMENDATION (DKT. 317)**

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The R&R Applied the Incorrect Meaning of "Indirect Control." ..... 2

1. The R&R Confused Control of an Entity with Managing Its Assets. ..... 2

2. The Taurus Agreement's Other Provisions Confirm That Control Requires Authority Over the Entity, Not Management of Its Assets. ..... 3

B. The R&R Improperly Resolved Disputed Facts in Toyota's Favor. ..... 3

1. The R&R Improperly Characterized Murphy's Ownership and Authority over IP Optimum as "Nominal." ..... 3

2. The R&R Improperly Treated IPwe's Activities as Conclusive Proof of Spangenberg's Control over IP Optimum. ..... 4

C. The R&R Fails to Establish That the 2007 Taurus Agreement Encumbered IP Optimum's Patents ..... 5

1. The Taurus Agreement Did Not Effect a License Grant by IP Optimum. ..... 5

2. The R&R Failed to Establish That a License Attached to the Patents. ..... 6

D. The District Court Should Receive Spangenberg's Declaration. ..... 6

1. At a Minimum, the Declaration Establishes a Material Dispute Over Who Controlled IP Optimum. ..... 6

2. Toyota's Discovery Conduct and the Declaration's Materiality Warrant Its Substantive Consideration by the Court. ..... 7

3. The District Court Should Expressly Determine Whether the Declaration Is Part of the Summary Judgment Record. ..... 8

III. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

**Cases** **Pages**

*Abbott v. Equity Grp., Inc.*,
2 F.3d 613 (1993) .......... 2

*Ahders v. SEI Priv. Tr. Co.*,
982 F.3d 312 (2020) .......... 2

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) .......... 2

*Chauche v. Pare*,
75 F. 283 (1896) .......... 5
\

*Davis v. Hernandez*,
798 F.3d 290 (2015) .......... 7

*Fontenot v. Upjohn Co.*,
780 F.2d 1190 (1986) .......... 2

*Freeman v. Cnty. of Bexar*,
142 F.3d 848 (1998) .......... 7

*Furmanite Worldwide, Inc. v. NextCorp, Ltd.*,
339 S.W.3d 326 .......... 3

*Optimal Golf Sols., Inc. v. Altex Corp.*,
No. 3:09-CV-1403-K, 2015 WL 93434 (2015) .......... 5

*Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*,
322 F.3d 847 (2003) .......... 7, 8

*URI, Inc. v. Kleberg Cnty.*,
543 S.W.3d 755 (2018) .......... 2

**Statutes**

17 C.F.R. § 230.405 .......... 2

17 C.F.R. § 240.12b-2 .......... 2

28 U.S.C. § 636(b)(1) .......... 1, 2

35 U.S.C. § 261 .......... 5

**Rules**

Fed. R. Civ. P. 72 .......... 1, 2, 7, 8

## I. INTRODUCTION

The Court should reject the R&R because it equates patent prosecution and administrative services provided through Spangenberg's company, IPwe, with "control" of a company that temporarily owned AutoConnect's patents in 2019, then assumes that such control permitted Spangenberg's 2007 agreement with Toyota to grant license rights in those patents. Dkt. 317.

AutoConnect transferred its patents to IP Optimum and reacquired them less than a year later. IP Optimum was a separate Irish company whose sole shareholder, director, and CEO was James Murphy. The patent purchase agreement ("PPA") identified IPwe as a transactional intermediary and identified Toyota as a prospective licensee. Toyota identified no ownership, voting rights, or corporate governance authority held by Spangenberg, much less authority to bind IP Optimum. Yet the R&R dismissed Murphy's ownership as "nominal" and characterized Toyota's circumstantial evidence as "overwhelming," resolving disputed questions of corporate control in Toyota's favor despite its burden to establish the license defense as a matter of law.

Spangenberg's declaration further confirms that Murphy alone had decision-making authority, including the power to reject IPwe's recommendations and terminate its engagement. The Court should receive the declaration during de novo review because Toyota's misleading representations and withholding of communications concerning Spangenberg's deposition impaired AutoConnect's ability to obtain his testimony during discovery. The Court had already acknowledged the unfairness resulting from Toyota's delayed disclosure of the license and related defense, which was not allowed into the case until June 16—just 24 days before the R&R issued.

AutoConnect therefore objects under 28 U.S.C. § 636(b)(1), Rule 72(b), and Local Rule CV-72(c), and requests that the Court reject the R&R, deny Toyota's summary judgment motion, receive Spangenberg's declaration, and independently adjudicate AutoConnect's competing motion for summary judgment that Toyota lacks a license to the asserted patents.

## II. ARGUMENT

The Court reviews the R&R de novo and may receive additional evidence. Rule 72(b)(3); 28 U.S.C. § 636(b)(1). Toyota, as the moving party, must establish every element of its licensing defense "beyond peradventure." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The Court must draw reasonable inferences in favor of the non-movant without weighing evidence or making credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

### A. The R&R Applied the Incorrect Meaning of "Indirect Control."

#### 1. The R&R Confused Control of an Entity with Managing Its Assets.

The Taurus agreement defines a "Spangenberg Related Entity" as an ***entity*** "owned or controlled, directly or indirectly," by Spangenberg. Dkt. 216-2 at 3. Under Texas law, contractual language receives its ordinary meaning in context. *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763–65 (Tex. 2018). "Control" means the power to direct an entity's management and policies. *E.g.*, *Control*, Black's Law Dictionary (12th ed. 2024); 17 C.F.R. §§ 230.405, 240.12b-2. "Directly or indirectly" describes how that power may be exercised; it does not eliminate the requirement that the power exist. *See Ahders v. SEI Priv. Tr. Co.*, 982 F.3d 312, 316–17 (5th Cir. 2020) (providing services and possessing the ability to prevent the challenged conduct did not establish "control" under its plain meaning); *Abbott v. Equity Grp., Inc.*, 2 F.3d 613, 619–21 (5th Cir. 1993) (distinguishing substantial involvement in business decisions from power to control).

The R&R never defines "control" or identifies the power Spangenberg possessed to direct IP Optimum's management and policies. It acknowledges that Irish law restricted his involvement with IP Optimum but does not explain how he nevertheless controlled the company's affairs. Instead, it relies on activities undertaken through IPwe, a company Spangenberg co-founded that provided transaction and patent-management services, and concludes that the license "attaches to ***patents*** indirectly controlled by Mr. Spangenberg." R&R at 9 (emphasis added). Toyota

acknowledged that the contractual inquiry concerned control of the ***entity*** but argued the distinction was immaterial because the patents were IP Optimum's only assets. 6/16/26 Hrg. Tr. 14:17–25, 67:14–68:4. By equating patent management with control over IP Optimum, the R&R applied the wrong contractual standard and effectively disregarded IP Optimum's separate corporate existence.

**2. The Taurus Agreement's Other Provisions Confirm That Control Requires Authority Over the Entity, Not Management of Its Assets.**

The agreement's provisions confirm that "control" concerns authority over the entity, not merely patent-related activities. Sections 3.1 and 3.2 contemplate grants of patent rights and covenants not to sue; § 2.4 imposes litigation-related obligations; § 7.3 addresses patent transfers; and § 8.1(a) concerns authority to grant the contemplated rights. Dkt. 216-2. These provisions contemplate power to cause an entity to undertake binding obligations. They do not suggest that transaction support or patent management gives the service provider control over the entity.

Nor can the R&R's reliance on a "litigation peace" objective expand those provisions. R&R at 9; Dkt. 361 at 3. The parties chose to cover entities Spangenberg owned or controlled, not entities that merely engaged his company's services. An agreement's stated objective cannot erase that limitation. *See Furmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.) ("Recitals in a contract are not strictly part of the contract, and they will not control the operative phrases of the contract unless those phrases are ambiguous.").

**B. The R&R Improperly Resolved Disputed Facts in Toyota's Favor.**

**1. The R&R Improperly Characterized Murphy's Ownership and Authority over IP Optimum as "Nominal."**

The R&R acknowledged that James Murphy was IP Optimum's owner, CEO, sole shareholder, and director, but dismissed his ownership as "nominal." R&R at 9. That disregards contemporaneous evidence of his authority. IP Optimum's constitution identifies Murphy as its sole shareholder and director and vests management powers in its directors. Dkt. 233, Ex. B at

8771–74, 8776. The PPA names Murphy as CEO and sole shareholder and refers to IPwe and its affiliates as "transactional intermediaries," excluding them as parties, directly or indirectly, to that agreement. Dkt. 216-3 at AC00148961, § 2.1. Murphy also executed all IP Optimum agreements. *E.g.*, Dkt. 216-4 at AC00163736; Dkt. 324-13 (PV00003109); Dkt. 324-14 (PV00006702).

Spangenberg did not have rights to vote, remove Murphy, override Murphy's decisions, or compel IP Optimum to act. The evidence supports a finding that Murphy alone controlled IP Optimum while IPwe performed delegated services. The R&R's characterization of Murphy's ownership as "nominal" improperly resolved a factual dispute against AutoConnect.

**2. The R&R Improperly Treated IPwe's Activities as Conclusive Proof of Spangenberg's Control over IP Optimum.**

IPwe's services for IP Optimum are consistent with its documented intermediary role, not evidence that Spangenberg controlled IP Optimum. The R&R nevertheless relied on those materials to find "overwhelming" evidence of indirect control. R&R at 9. Formation of a special-purpose entity does not establish who subsequently controlled it, and negotiating transactions, coordinating prosecution, and paying patent expenses from a Spangenberg-related account likewise do not establish authority over IP Optimum. Even correspondence describing "Erich's group (IP Optimum / Darren Auito)" as being "in control of the portfolio" concerns the patent assets and includes prosecution counsel, not merely Spangenberg. Dkt. 237, Ex. P at AC00351042.

The testimony reinforces that distinction. Neither Grubbs nor Goodman, who handled prosecution communications and payments for IPwe, supported Toyota's theory of control over IP Optimum. Dkt. 216-15 at 23:20–24:17, 27:3–12, 29:14–30:6, 55:9–56:19, 59:12–61:17, 61:24–62:13. Toyota's expert acknowledged that prosecution activities, fee payments, and business involvement do not automatically establish corporate control, and that delegated responsibilities differ from control of the entity. Dkt. 233, Ex. A at 87:19–88:15, 96:5–17.

Moreover, Spangenberg stated well before this lawsuit was filed that he was "not the owner or in control" of IP Optimum. Dkt. 233, Ex. H at AC00319958. This body of evidence supports a reasonable inference that Murphy alone controlled IP Optimum. The R&R improperly resolved that inference in Toyota's favor to find "indirect control" as a matter of law.

### C. The R&R Fails to Establish That the 2007 Taurus Agreement Encumbered IP Optimum's Patents.

#### 1. The Taurus Agreement Did Not Effect a License Grant by IP Optimum.

Even assuming Spangenberg "indirectly controlled" IP Optimum under the contract, that finding does not establish his authority to license its patents. The Taurus agreement was executed in 2007—more than a decade before IP Optimum existed or acquired the asserted patents. A contractual definition of "Spangenberg Related Entity" does not itself confer authority to grant rights in another company's property. 35 U.S.C. § 261; *see Optimal Golf Sols., Inc. v. Altex Corp.*, No. 3:09-CV-1403-K, 2015 WL 93434, at *3 (N.D. Tex. Jan. 7, 2015); *Chauche v. Pare*, 75 F. 283, 285 (9th Cir. 1896). Toyota identified no evidence that Spangenberg had any such authority.

Nor does § 3.2 establish that IP Optimum granted Toyota a license. Although the provision states that the Spangenberg Related Entities "hereby grant" license rights, IP Optimum did not yet exist when the agreement was executed. Merely identifying a category of entities as grantors does not establish that each entity is legally bound by the purported grant. Toyota identified no legal basis by which the 2007 agreement could bind IP Optimum, a subsequently formed, non-signatory company, merely because it allegedly satisfied the definition of a Spangenberg Related Entity. After finding "indirect control," the R&R simply assumed that its patents became licensed. R&R at 9. That conclusion does not establish the legal effectiveness of the purported grant.

The contemporaneous PPA reinforces that conclusion. It expressly contemplated licensing Toyota, inconsistent with a finding that Toyota already had a license. Dkt. 216-3 § 3.3(c)(i)(1).

### 2. The R&R Failed to Establish That a License Attached to the Patents.

Toyota bore the burden of establishing that a valid Taurus agreement attached to the asserted patents before their reassignment to AutoConnect. Yet the R&R relied on § 7.3 and the ***absence*** of evidence of "non-encumbrance" to conclude the license remained attached. R&R at 9–10. Section 7.3 preserves existing license rights upon transfer; it does not create new rights that never attached in the first instance. By assuming attachment and requiring AutoConnect to disprove continuing encumbrance, the R&R improperly shifted Toyota's summary-judgment burden.

The remaining contemporaneous evidence also fails to establish attachment. Toyota identified no annual disclosures listing the asserted patents, and the reassignment contained no reference to a Taurus encumbrance. Dkt. 233, Ex. A at 62:20–65:9; Dkt. 216-4. Although neither omission is dispositive, both are inconsistent with Toyota's assertion that the patents were treated as encumbered. At a minimum, the record raises a genuine dispute over whether any license attached. Without establishing initial attachment, Toyota could not establish that the asserted patents remained encumbered when they returned to AutoConnect.

## D. The District Court Should Receive Spangenberg's Declaration.

### 1. At a Minimum, the Declaration Establishes a Material Dispute Over Who Controlled IP Optimum.

Spangenberg's declaration addresses the critical question that Toyota's evidence did not—who possessed authority over IP Optimum's decisions. It confirms that Murphy alone could bind the company, approve licenses and assignments, replace counsel, and terminate IPwe's engagement. Dkt. 324-10 ¶¶ 7, 24, 28, 36. Spangenberg could recommend transactions and coordinate their implementation but could not compel Murphy to approve them. *Id.* ¶¶ 7, 27–28, 37; Dkt. 361 at 3. IPwe's activities and expense payments reflected its patent-management

services, not authority over IP Optimum. Dkt. 324-10 ¶¶ 21–28, 30–38. Murphy's ability to reject Spangenberg's recommendations and terminate IPwe's services is affirmative evidence that Spangenberg lacked authority over IP Optimum. The declaration therefore does not merely supplement the existing record; it directly undermines the inference on which Toyota's summary judgment depends. At a minimum, it creates a genuine dispute concerning indirect control.

**2. Toyota's Discovery Conduct and the Declaration's Materiality Warrant Its Substantive Consideration by the Court.**

Rule 72(b)(3) allows the District Court to receive additional evidence during de novo review. *Freeman v. Cnty. of Bexar*, 142 F.3d 848, 852–53 (5th Cir. 1998); *Davis v. Hernandez*, 798 F.3d 290, 292–93 (5th Cir. 2015). The Court should consider the explanation for the omission, materiality, prior availability, and prejudice. *Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 862 (5th Cir. 2003).

Toyota's conduct materially affected AutoConnect's opportunity to obtain Spangenberg's testimony. Toyota withheld the Taurus agreement and its license defense until after taking a deposition related to IP Optimum, prompting the Court to acknowledge the resulting unfairness at the June hearing and invite relief. Tr. 40:1–41:20. Toyota also pursued Spangenberg's deposition while AutoConnect requested scheduling updates and advised that it intended to serve a follow-on subpoena once a date was set. After communicating with Spangenberg, Toyota decided his deposition was unnecessary and abandoned it without informing AutoConnect. Instead, Toyota represented that it had "no update" and that no deposition was "currently scheduled." Dkt. 324-6. Toyota withheld production of those communications until after fact and expert discovery were completed. Dkt. 324 at 2–5 & Exs. C–I. Toyota further represented that Spangenberg resided outside the United States and was unwilling to be deposed, although his declaration confirms his willingness to testify. *Compare* 6/16/26 Hrg. Tr. 65:14–23 *with* Dkt. 324-10 ¶¶ 13-14. The

reconsideration order focused on the absence of a scheduled deposition without addressing Toyota's misleading scheduling representations, its undisclosed decision to abandon the deposition, or the resulting prejudice to AutoConnect's discovery efforts. Dkt. 361 at 1–2.

The reconsideration order also incorrectly stated that AutoConnect did not contact Spangenberg until the R&R issued on July 10. In fact, AutoConnect contacted him on July 5, arranged a July 9 call, and notified Toyota of its intended request for relief ***before*** the R&R issued. Dkt. 327 at 3–4; Dkt. 324 at 2, Ex. A. AutoConnect had previously pursued Spangenberg's testimony through Toyota's pending subpoena, repeatedly requesting scheduling updates in reliance on Toyota's misleading representations. Although AutoConnect could have contacted him independently, that possibility does not justify disregarding a declaration directly addressing the dispositive issue, particularly where Toyota has possessed it since July and fully addressed its substance. *Performance Autoplex*, 322 F.3d at 862. These circumstances warrant receipt of the declaration even without a finding of discovery misconduct.

#### 3. The District Court Should Expressly Determine Whether the Declaration Is Part of the Summary Judgment Record.

The Court's reconsideration order addressed the declaration's substance "[r]egardless of whether the record is formally supplemented," leaving its evidentiary status unresolved. Dkt. 361 at 2. AutoConnect requests that the Court formally receive the declaration under Rule 72(b)(3) and consider it in independently determining whether Toyota has established its license defense as a matter of law.

## III. CONCLUSION

AutoConnect respectfully requests that the Court sustain its objections to the R&R, deny Toyota's motion for summary judgment, receive Spangenberg's declaration, and separately adjudicate AutoConnect's competing motion on the proper record.

Dated: November 4, 2026

**AVANTECH LAW, LLP**

By: *s/William R. Woodford*

William R. Woodford (LEAD) (#0322593)
woodford@avantechlaw.com
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (855) 750-9951
Fax: (612) 484-2001

***Attorney for Plaintiff***
***AutoConnect Holdings LLC***

Todd S. Werner *(pro hac vice)*
werner@avantechlaw.com
Jason M. Zucchi (*pro hac vice*)
zucchi@avantechlaw.com
Shelleaha L. Jonas (*pro hac vice*)
jonas@avantechlaw.com
**AVANTECH LAW, LLP**
80 South 8th Street, Suite 900
Minneapolis, MN 55402
Tel: (855) 750-9951
Fax: (612) 484-2001

Julianne Thomsen (*pro hac vice*)
thomsen@avantechlaw.com
**AVANTECH LAW, LLP**
521 5th Avenue, 17th Floor
New York, NY 10175-0038
Tel: (855) 750-9951
Fax: (612) 484-2001

Kathryn A. Quisenberry (Bar No. 24105639)
quisenberry@avantechlaw.com
Russell Rodriguez (Bar No. 24126973)
rodriguez@avantechlaw.com
**AVANTECH LAW, LLP**
1000 Main Street, Suite 2300
Houston, TX 77002
Tel: (855) 750-9951
Fax: (612) 484-2001

Andrea Fair (Texas Bar No. 24078488)
andrea@millerfairhenry.com
Garrett Parish (Texas Bar No. 24125824)
garrett@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Tel: (903) 757-6400
Fax: (903) 757-2323

***Attorneys for Plaintiff***
***AutoConnect Holdings LLC***

**CERTIFICATION OF SERVICE**

This is to certify that on November 4, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ William R. Woodford*
William R. Woodford