**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AUTOCONNECT HOLDINGS LLC,<br>*Plaintiff*,<br>v.<br><br>TOYOTA MOTOR CORPORATION, ET. AL.,<br>*Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:24-cv-00802-JRG-RSP<br><br>(Lead Case) |

**MEMORANDUM ORDER**

Before the Court is Defendants' Motion to Exclude the Opinions and Testimony of Dr. Timothy Williams. **Dkt. No. 227**. In its Motion, Defendants seek exclusions of portions of Dr. Williams' report as unreliable and based on unsound methodologies, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc*. 509 U.S. 579, 592-93 (1993). Having considered the Motion, and for the reasons discussed below, the Court **DENIES** Defendants' Motion.

## I. BACKGROUND

In this consolidated action, Plaintiff alleges that Defendant General Motors LLC[1] ("GM") infringes certain claims of U.S. Patent Nos. 9,020,491 ("the '491 patent), 9,116,786 ("the '786 patent), 9,140,560 ("the '560 patent), 9,173,100 ("the '100 patent"), 9,290,153 ("the '153 patent"), and 10,862,764 ("the '764 patent) ("the asserted patents"). *See* Dkt. No. 298 at 4. The Asserted Patents are directed generally at connected vehicle technology.

[1] In addition to five of the six listed here, Plaintiff asserted U.S. Patent No. 9,020,697 ("the '697 patent) against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor Sales, U.S.A. Inc. ("Toyota"). Since the filing of this Motion, the Court has entered a Report and Recommendation, finding that Toyota holds a license to the asserted patents and denied a motion for reconsideration by Plaintiff. *See* Dkt. Nos. 317, 361. A Final Judgment was entered on November 13, 2026 dismissing all claims asserted against Toyota. (Dkt. No. 371). Accordingly, this ruling pertains only to the claims asserted against GM.

## II. LEGAL STANDARD

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

(“When, as here, the parties’ experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert’s testimony.”); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) (“‘[t]he trial court’s role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.’ . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits,” quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, “Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.” *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

The Court is the sole arbiter of claim construction disputes. *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009) (“No party may contradict the court’s construction to a jury.”). An expert is bound by the claim construction set forth by the Court. *See id.* Incorrect claim construction statements go to the relevance of the expert’s opinion, and thus form a basis to exclude an expert’s opinion. *See Liquid Dynamics Corp. v. Vaughan Co., Inc.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2016) (affirming exclusion of expert's testimony because it was based on an impermissible claim construction).

## III. <u>ANALYSIS</u>

### A. Apportionment Opinions

Defendants argue that Dr. Williams’ apportionment analysis should be stricken “because the opinions are purely subjective and untethered to any reliable methodology.” Dkt. No. 227 at 3. Defendants point to deposition testimony and argue that it admits his analysis is based on “guesswork,” rather than “reliable methodology.” *Id.* at 3-4. Defendants point to caselaw where

an expert's purported *ipse dixit* was excluded as unreliable. *Id.* Defendants point to several exclusions in Dr. Williams' analysis and argue that it demonstrates a failure to tie his analysis to the asserted patents. *Id.* at 6-7.

In response, Plaintiff argues that Dr. Williams' opinions are based on a 3-step framework, which (1) identifies "functional layers" each with a "technical weight," (2) determines each asserted patent's contribution to each layer, and then (3) "combines those inputs" to generate a "technical contribution" for each patent. Dkt. No. 244 at 1. Plaintiff argues that Defendant mischaracterizes Dr. Williams' deposition testimony, and that he did not "disclaim methodology," but instead explained that "no published methodology" could provide this analysis. *Id.* at 2. Plaintiff disputes Defendants' characterization of Dr. Williams' report as "untethered" to the facts and points to technical documentation he relies on in his report. *Id.* at 4. Plaintiff argues that any patents excluded from a "layer" are a feature of his analysis, and indicate features not present, rather than an indication of its flaws. *Id.* at 5.

The Court finds that Dr. Williams' apportionment opinion is based on sufficiently sound methodology and should not be excluded. Turning first to Defendants' caselaw, each case struck *damages* opinions based on unsupported apportionment opinions. In each case, the Court's decision rested on the damages expert's lack of technical expertise. Here, Dr. Williams is Plaintiff's *technical* expert, whose expertise presumably entitles him to opine on technical apportionment. Since Dr. Williams's 3-step methodology is grounded in his expertise, and cited evidence and general engineering principles, the Court finds his technical apportionment opinions grounded in evidence, not mere *ipse dixit*. In *Finjan, Inc. v. Blue Coat Sys., Inc.*, the Federal Circuit found permissible an expert's technical apportionment based on technical documentation produced by the defendants in the case. 879 F.3d 1299, 1312-13 (Fed. Cir. 2018). The documents contained

"twenty-four boxes representing different parts of" the accused system, where "each box represented one top level function and that each function was equally valuable." *Id.* at 1313. The expert based his apportionment on the number of functions infringing each patent. *Id.* The expert supported this one-to-one apportionment with technical documentation and testimony by the defendant's engineers. *Id.* The Federal Circuit concluded that since the plaintiff's expert relied on this documentation and testimony, the testimony was based on "substantial evidence" and that admitting the testimony was proper. *Id.* This Court likewise finds that Dr. Williams' analysis is admissible and not mere *ipse dixit*. Dr. Williams' report relies on technical documentation, including the Apple CarPlay and Android Auto technical documents, to form his opinions. Like *Finjan*, the Court finds this documentation sufficient evidence to support his opinions. Therefore, the Court **DENIES** Defendant's Motion as to Dr. Williams's technical apportionment opinions

**B. Infringement Opinions**

Defendants argue that Dr. Williams failed to follow the methodology he opines is necessary for a [person of ordinary skill] to "determine the presence of certain limitations," and thus his opinion is based on "faulty methodology." Dkt. No. 227 at 7. Defendants identify two limitations where Dr. Williams opines on the required instructions but fails to properly consider these instructions in his analysis. *Id.* Defendants conclude that this methodology ignores several limitations, it is unreliable and should be stricken. *Id.* at 7-8.

Plaintiff argues that Defendants interpret Dr. Williams's testimony too literally, and that the cited testimony merely provides "examples of ways a person of ordinary skill might evaluate system functionality." Dkt. No. 244 at 8. Plaintiff further argues that in any event Dr. Williams relied on sufficient technical documentation, a "standard engineering practice" that renders his testimony reliable under FRE 702. *Id.*

The Court finds Dr. Williams' infringement opinions are based in sufficient methodology. For each challenged limitation, Dr. Williams testified that source code review, a methodology Defendants contend is absent from his report, provides *an available* means to evaluate the presence of asserted claim limitations. Defendants' argument, however, fails to consider that these merely provide one means for technical analysis, and that they are not a necessary substitute for general engineering principles and methods – the latter being present in Dr. Williams' report. Since Dr. Williams' report clearly relies on such principles, the Court finds exclusion unwarranted. Therefore, the Court **DENIES** Defendants' Motion as to allegedly undisclosed infringement opinions.

### C. Claim Construction

#### *1. "determine load"*

Defendants argue that Dr. Williams' report contradicts the Court's claim construction Order for the "determine load" limitation, since he opines that it can be met "as long as the accused system is configured to perform all of the claimed limitations in any order." Dkt. No. 227 at 8. Defendants point to the claim construction Order, which they allege requires the "determine load" limitation to "facilitate the limitations that follow." *Id.* Defendants conclude that since the Court's claim construction Order requires sequential configuration, Dr. Williams' "in any order" opinions introduce new claim constructions that should be stricken. *Id.* Defendants support their position through other portions of Dr. Williams' report, which purports to introduce a similar "temporal limitation" to avoid prior art. *Id.* at 8-9.

Plaintiff disputes Defendants' characterization of the Court's claim construction Order as introducing a strict "temporal requirement" to the "determine load" term. Dkt. No. 244 at 9.

Plaintiff argues that instead, the "facilitate the limitations that follow" refers to the "communication system" the disputed term is part of, rather than the term itself. *Id.*

The Court finds that Dr. Williams's report does not depart from the Court's "plain and ordinary" construction for the "determine load" term. The Court's claim construction Order reads:

> the claims provide context for understanding that determining load is performed in the context of a "communications system" and is determined so as to facilitate the limitations that follow, as Plaintiff discussed at the January 29, 2026 hearing. Dkt. No. 165 at 37.

At the claim construction hearing, counsel for Plaintiff stated that while the limitation "[does not] require" it to "facilitate the limitations that follow…effectively, yes, that is what's happening." *See* Dkt. No. 157 at 48:3-15. Defendant did not question the order in which the signal processor performed the claimed functions, and the Court did not address it. The issue raised was the purpose for which the load was to be determined, which was what the Court addressed in the passage quoted above. Dr. Williams' report is not inconsistent with this position, that while the typical operation of the patented invention occurs sequentially, that is not required. Therefore, the Court **DENIES** Defendants' Motion with respect to the "determine load" limitation.

*1. "two or more Bluetooth transceiver" & '764 Patent*

Defendants argue that Dr. Williams' report introduces a new construction for the "two or more Bluetooth transceiver" limitation, since he allegedly allegedly construes it as "transceivers configured to provide independent streams of information." Dkt. No. 227 at 9. Defendants conclude that this contradicts the Court's "plain and ordinary" construction. *Id.* For the '764 Patent, Defendants argue that Dr. Williams' report introduces several "specialized meanings" for the unconstrued "communication network," "vehicle control system," "power control module," and "device" terms. Dkt. No. 227 at 10. Defendants point to deposition testimony and argue that Dr. Williams testifies these terms have special meaning "in terms of the specification." *Id.*

In response, Plaintiff argues that the challenged portions of Dr. Williams' analysis are not in the context of claim scope but instead relate to motivation to combine with prior art. Dkt. No. 244 at 9. Plaintiff argues that the quoted deposition testimony refers to a person of ordinary skill's understanding of the patent "in the context of the patent," rather than attempting new claim construction. *Id.* at 10.

The Court finds that Dr. Williams' report does not introduce new claim constructions for the "two or more Bluetooth transceiver" limitation nor for the '764 Patent. A technical expert is permitted to opine as to how a person of ordinary skill would understand a patent term's plain and ordinary meaning in light of its specification, or would view prior art. Since these challenged opinions provide such factual testimony, rather than impermissible legal testimony or claim construction, the court finds exclusion unwarranted. Therefore, the Court **DENIES** Defendants' Motion with respect to the "two or more Bluetooth transceiver" limitation and the '764 Patent.

**D. '100 Patent**

Defendants argue that since Dr. Williams is not an expert in automotive security, he is not qualified to opine on the '100 Patent, which is in the field of automotive security. Dkt. No. 227 at 12. The Court finds that Defendants' challenge should be denied. An expert's expertise need not mirror the exact technology at issue, so long as he possesses the requisite "scientific, technical, or other specialized knowledge" that Rule 702 requires. *See Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1431 (5th Cir. 1989) ("The fact that [the challenged expert] is not a specialist in any other field goes to the weight of his opinion, not its admissibility"). While Dr. Williams is not specifically trained in automotive security, Defendants fail to demonstrate that his expertise as to its "underlying principles" is insufficient. Therefore, the Court **DENIES** Defendants' Motion as to the '100 Patent.

## IV. <u>CONCLUSION</u>

Having considered the Motion, and for the reasons discussed above, Defendants' Motion is **DENIED**.

**SIGNED this 16th day of November, 2026.**



ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE