**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| AUTOCONNECT HOLDINGS LLC, *Plaintiff*, v. TOYOTA MOTOR CORPORATION, ET. AL., *Defendants*. | § § § § § § § | Case No. 2:24-cv-00802-JRG-RSP (Lead Case) |

## MEMORANDUM ORDER

Before the Court is Defendants' Motion to Exclude the Opinions and Testimony of Mr. Roy Weinstein. **Dkt. No. 235**. In its Motion, Defendants seek exclusions of portions of Mr. Weinstein's damages report as unreliable and based on unsound methodologies, pursuant to Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc*. 509 U.S. 579, 592-93 (1993). Having considered the Motion, and for the reasons discussed below, the Defendants' Motion is denied.

## I. BACKGROUND

In the above-captioned consolidated action, Plaintiff alleges that Defendant General Motors LLC[1] ("GM") infringes certain claims of U.S. Patent Nos. 9,020,491 ("the '491 patent), 9,116,786 ("the '786 patent), 9,140,560 ("the '560 patent), 9,173,100 ("the '100 patent"), 9,290,153 ("the '153 patent"), and 10,862,764 ("the '764 patent) ("the asserted patents"). *See* Dkt. No. 298 at 4. The Asserted Patents are directed generally at connected vehicle technology.

[1] In addition to the six listed in the background section below, Plaintiff asserts U.S. Patent No. 9,020,697 ("the '697 patent) against Toyota Motor Corporation, Toyota Motor North America, Inc., Toyota Motor Engineering & Manufacturing North America, Inc. and Toyota Motor Sales, U.S.A. Inc. ("Toyota"). Since the filing of this Motion, the Court has entered a Report and Recommendation, finding that Toyota holds a license to the asserted patents and denied a motion for reconsideration by Plaintiff. *See* Dkt. Nos. 317, 361. A Final Judgment was issued on November 13, 2026 dismissing all claims asserted against Toyota. (Dkt. No. 371). In light of this development, the Court's order does not address the separate, Toyota-only issues that Defendants raise in §§ B and F of the Motion.

## II. <u>LEGAL STANDARD</u>

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law)

("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## III. <u>ANALYSIS</u>

### A. VACI Opinions

Defendants contend that for the VACI ("Vehicle Application and Cloud Integration") patents, a subset of the Asserted Patents, Mr. Weinstein's opinions are unreliable, since he fails to apportion to each patent and relies on "Dr. Williams's fatally flawed 24% 'apportionment.'" Dkt. No. 235 at 3.

#### *1. Dr. Williams's "24%" Value*

Defendants first raise the same arguments from their Motion to Exclude Dr. Williams, that his 24% apportionment to the VACI patents is based on unreliable methodology. *Id.* Defendants conclude that since Mr. Weinstein relies on this input, his opinions are likewise unreliable for the VACI patents. *Id.* at 3-4.

Since the Court has declined to strike Dr. Williams's 24% apportionment for the VACI patents, the Court **DENIES** Defendants' Motion as to this analysis.

2. *"One-Size-Fits-All"*

Defendants argue that Mr. Weinstein's analysis is flawed, since it is allegedly not tied to the "incremental value" of the patented invention, as his damages figure would not change as long as infringement is found for "at least one patent from each patent group." Dkt. No. 235 at 4. Defendants argue this fails to account for the differences between the patents, and whether the demand for each patent varies. *Id.* at 5.

In response, Plaintiff argues that Defendants' criticism ignores how Mr. Weinstein implements Dr. Williams's "technical apportionment framework. Dkt. No. 265 at 2. Plaintiff argues that Mr. Weinstein's analysis is based on a "common core of benefits within a system." *Id.* at 3. For Defendants' "consumer demand" criticism, Plaintiff argues that Rule 702 does not require a claim-by-claim consumer demand analysis and argues Mr. Weinstein's analysis of *Georgia Pacific* factors 9 and 10 provides sufficient analysis. *Id.* at 4.

The Court finds Defendants' "one-size-fits-all" criticism unwarranted. Dr. Williams's VACI analysis divides the patented features into "functional layers," which translate the claims to the patented invention's primary benefits. While Defendants argue that Mr. Weinstein's economic opinions are untethered to the patented features, this technical analysis provides the necessary translation. Furthermore, the Court finds sufficient Mr. Weinstein's analysis of *Georgia Pacific* factors 9 and 10 for consumer demand, since he is not required to provide a claim-by-claim analysis for consumer demand. Therefore, the Court **DENIES** Defendants' Motion as to this analysis.

1. *GM Study, Aftermarket Unit and BMW Subscription*

Defendants argue that Mr. Weinstein's reliance on a GM-commissioned customer study which assigned a 2% value to "smartphone mirroring" is flawed, since it fails to distinguish "the

apportioned value of CarPlay/Android Auto from the alleged profitability of an entire vehicle." Dkt. No. 235 at 6. Defendants further argue that Mr. Weinstein's survey is flawed, since he fails to "apportion out the functionality that pre-dated CarPlay/Android Auto or the VACI patents" from the "admittedly broader category of 'smartphone mirroring.'" *Id.* at 6. For the Pioneer aftermarket CarPlay/Android Auto units, Defendants argue that even though Mr. Weinstein's analysis acknowledges the differences between factory and aftermarket units, his analysis remains flawed since "he never quantified those differences" or subtracted away the unpatented features. *Id.* at 7. Defendants argue that Mr. Weinstein's reliance on BMW's $300/year CarPlay/Android Auto subscription fee is flawed, since it ignores the consumer backlash and BMW's eventual reversal. *Id.* at 8-9.

In response, Plaintiff argues that the three benchmarks are reliable, since each "independently reflects the market value consumers place on CarPlay and Android Auto functionality." Dkt. No. 265 at 4. For the GM survey, Plaintiff notes that its reference to "smartphone mirroring" rather than CarPlay/Android Auto is merely a "brand-neutral description" rather than a separate functionality. *Id.* at 4-5. For the aftermarket systems, Plaintiff points to portions of Mr. Weinstein's analysis where he "accounted for those distinctions." *Id.* at 5. For the BMW subscription, Plaintiff argues that regardless of consumer backlash, it provides relevant valuation data, since the primary consumer objection related to "pricing structure," rather than the price itself. *Id.* at 5-6.

The court finds that all three inputs form sufficiently reliable economic benchmarks and should not be stricken. For the GM survey, the "brand-neutral" explanation links the study's results to the accused CarPlay/Android Auto features. Furthermore, Mr. Weinstein's survey highlights the similarities in features between the aftermarket and factory CarPlay/Android Auto systems,

and thus provides "sufficient comparability" between the studied and accused features. Finally, the Court finds that the BMW subscription price remains reliable for valuation, since the primary consumer objection related to the subscription model itself, rather than its price. Therefore, the Court **DENIES** Defendants' Motion as to the GM Study, Aftermarket Units and BMW Subscription.

### B. '100 Patent

Defendants argue that Mr. Weinstein's reliance on two "unreliable proxies" for the '100 Patent renders his opinions unreliable and unsupported under Rule 702 and *Daubert*. Dkt. No. 235 at 13. Defendants first argue that Mr. Weinstein's reliance on an *EE Times Asia* article to establish a value for "cybersecurity protection" is flawed, since it "doesn't cite any data" to back its conclusion, and since Mr. Weinstein "could not say that the EE Times Asia 'is the type of publication that someone would rely on … in a typical economic journal.'" *Id.* at 13. For the '100 Patent's "OBD2 Firewall Proxy," Defendants argue that Mr. Weinstein's reliance on the "Car Key Firewall Clone Protector," an "aftermarket product that plugs into the car as a theft prevention device," is flawed, since he fails to apportion out non-patented features. *Id.* at 14.

In response, Plaintiff argues that Defendants' Motion applies too rigid a standard, and that the "relevant inquiry is whether the methodology reliably ties the benchmark evidence to the value of the patented functionality." Dkt. No. 265 at 10. Plaintiff argues that Mr. Weinstein relies on Dr. Williams's technical analysis to link the challenged "proxies," including the "Firewall Proxy" to the patented technology. *Id.* at 10. For the *EE Times Asia* article, Plaintiff points to Mr. Weinstein's deposition, where he testified that "he has relied on similar publications in his work." *Id.* at 11. Plaintiff argues that any further dispute speak to the testimony's weight and not its underlying admissibility. *Id.* at 11-12.

The Court finds that Mr. Weinstein's reliance on the *EE Times Asia* article and "Car Key Firewall Clone Protector" is not improper. For the former, Rule 702 contains no requirement that limits an economic expert's sources to "journals" in their field, as Defendants contend. Instead, the universe of permissible sources is broader – "facts or data of a type reasonably relied upon by experts in a particular field." *See United States v. Gresham*, 118 F.3d 258, 266 (5th Cir. 1997). Given that Mr. Weinstein testified that he has "relied on similar publications," the Court finds his opinions based on the *EE Times Asia* article is allowable. The Court likewise finds Mr. Weinstein's reliance on the "Car Key Firewall Clone Protector" permissible. Rule 702 does not require a claim-by-claim match for similar products. Instead, admissibility requires a "sufficient nexus to the relevant market, the parties, and the alleged infringement." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 856 (Fed. Cir. 2010), *aff'd*, 564 U.S. 91 (2011). Defendants motion, however, admits that Dr. Williams testifies that this proxy "provides benefits similar to certain functionalities" of the '100 Patent. Given Mr. Weinstein's reliance on Dr. Williams's testimony, the Court finds his opinions proper. Therefore, the Court **DENIES** Defendants' Motion as to the '100 Patent.

**C. Profit-Split Models**

Defendants contend that Mr. Weinstein's profit-split models are unreliable, since none "of these values are remotely tied to a reliable method for determining how [a manufacturer] and AutoConnect would divide incremental profit attributable to any patents in a hypothetical negotiation, let alone the specific patents here." Dkt. No. 235 at 14-15. Defendants conclude that since Mr. Weinstein's economic analysis is "unrelated to the patents asserted in this case," it is unreliable as not tied to the facts of the case. *Id.*

Plaintiff argues that Mr. Weinstein's profit-split model is rooted in the facts of the case and reflects "the parties' relative bargaining positions in the hypothetical negotiation." Dkt. No. 265 at

12. Plaintiff points to portions of Mr. Weinstein's analysis which purports to analyze the Parties' economic positions and contributions and argues that any further dispute goes to the weight of the evidence. *Id.*

The Court finds that Mr. Weinstein's profit-split models are proper. Defendants' primary criticism is that Mr. Weinstein's base – a GM-AT&T agreement for connected vehicle services – is not tied to the patented technology, nor accounts for the differences between AT&T and AutoConnect. Defendants may disagree with the factors Mr. Weinstein relies on to link the royalty base to the hypothetical negotiation; Defendants' criticisms, however, identify no legal flaws with the underlying methodology. While these criticisms may affect the testimony's value at trial, it does not affect its admissibility. Therefore, the Court **DENIES** Defendants' Motion as to Mr. Weinstein's profit split models.

### D. Hypothetical Negotiation Date

Defendants argue that Mr. Weinstein's June 2015 hypothetical negotiation date is flawed, since the alleged date of first use is April 15, 2015. Dkt. No. 235 at 17. Defendants contend that April 28, 2015, the VACI Patents' date of issuance, is the proper date. *Id.* Defendants argue this distinction is critical, since the patents were transferred from Flex to AutoConnect on May 20, 2015, and that GM had a supplier relationship with Flex, but not AutoConnect. *Id.* at 17-18. Defendants conclude that this ownership difference improperly inflates the patents' value and renders Mr. Weinstein's opinions unreliable. *Id.*

In response, Plaintiff argues that "GM's April 2015 first-use theory is also procedurally improper because…GM produced no evidence showing that any GM vehicle included CarPlay before June 2015 or otherwise supporting its newly asserted first use date." Dkt. No. 265 at 14. Plaintiff argues that Defendants' April 2015 date is based on "speculating" by its corporate

representative, and documents that do not establish "implementation of the accused functionality." *Id.* Plaintiff argues that this negotiation date dispute "would go to weight, not admissibility." *Id.* at 15.

The Court agrees that the underlying dispute over the date of first infringement by GM precludes striking Mr. Weinstein's analysis based on a June 2015 hypothetical negotiation date. Mr. Weinstein's analysis is based on a "mid 2015" first sale date for the 2016 Corvette, the first GM vehicle with the accused functionality. *See* Dkt. No. 265 at 13. While Defendants provide testimony which indicates an earlier production date, since the underlying fact dispute remains, the Court cannot deem this negotiation date unreliable. Therefore, the Court **DENIES** Defendants' Motion as to the hypothetical negotiation date.

## IV. CONCLUSION

Having considered the Motion, and for the reasons discussed above, the Court **DENIES** Defendants' Motion.

**SIGNED this 15th day of November, 2026.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE